## CRUTCHER *v.* KENTUCKY.

ERROR TO THE COURT OF APPEALS OF THE STATE OF KENTUCKY.

No. 828. Argued March 19, 1890. — Decided May 25, 1891.

The act of the legislature of Kentucky of March 2, 1860, " to regulate agencies of foreign express companies," which provides that the agent of an express company not incorporated by the laws of that State shall not carry on business there without first obtaining a license from the State, and that, preliminary thereto, he shall satisfy the auditor of the State that the company he represents is possessed of an actual capital of at least $150,000, and that if he engages in such business without license he shall be subject to fine, is a regulation of interstate commerce so far as applied to a corporation of another State engaged in that business, and is, to that extent, repugnant to the Constitution of the United States.

THE case was stated by the court as follows:

This case arose at Frankfort, Franklin County, Kentucky, upon an indictment found against Crutcher, the plaintiff in error, in the Franklin Circuit Court, for acting and doing business as agent for the United States Express Company, alleged to be an express company not incorporated by the laws of Kentucky, but trading and doing business as a common carrier, by express, of goods, merchandise, money and other things of value in and through the county and State aforesaid, without having any license so to do either for himself or the

company.  Crutcher, being arrested and brought before the
court, tendered a special plea setting forth the facts with re-
gard to his employment and the business of the company, and
amongst other things, that said company was a joint stock
company, incorporated and having its principal office in the
city of New York, in the State of New York, which plea was
refused.  He then pleaded "not guilty," and the parties filed
an agreed statement of facts; and, by consent, the matters of
law and fact were submitted to the court, and the defendant
was found guilty and sentenced to pay a fine of one hundred
dollars and the costs of prosecution.

The agreed statement of facts was as follows:

"It is agreed that defendant is agent of the United States
Express Co., a foreign corporation doing the business ordina-
rily done by express companies in this country, of carrying
goods and freight for hire not only from points in this State
to other points in this State, but also of carrying same charac-
ter of freight from points within this State to points without
State, in divers parts of the United States, and *vice versa.*

"And defendant, agent at Frankfort, Ky., never obtained
any license to do such business, nor did said express company
obtain any license from the State of Kentucky.  The proportion
of business done by the said company within and without this
State for the month of November, 1888, is shown by a state-
ment herewith filed, marked 'X,' and the same proportion of
business within and without this State, approximately, is gen-
erally done by said company."

The detailed statement referred to, marked X, showed the
total amount of business done by the company at the Frank-
fort office in November, 1888, to have been $226.71, of which
$56.14, or not quite one-fourth of the whole, was business done
entirely within the State; and the remainder, $170.57, was
done partly within and partly without the State; that is, the
goods were brought into the State from places without the
State, or were carried from the State to places without
the State.  Of course the latter, or largest portion, was com-
prised within the category of interstate commerce.

The defendant upon these facts moved for a new trial,

which was refused, and also for an arrest of judgment, which was denied, and a bill of exceptions was taken. The case was then appealed to the Court of Appeals of Kentucky, and the judgment was affirmed. The ground taken for reversing the judgment was that the statute of Kentucky, under which the indictment was found was repugnant to the power given to Congress by the Constitution of the United States to regulate commerce among the several States.

The law in question was passed March 2, 1860, and is as follows:

" An Act to Regulate Agencies of Foreign Express Companies :

" SECTION 1. *Be it enacted by the General Assembly of the Commonwealth of Kentucky,* That it shall not be lawful, after the first day of May, 1860, for any agent of any express company, not incorporated by the laws of this commonwealth, to set up, establish or carry on the business of transportation in this State, without first obtaining a license from the auditor of public accounts to carry on such business.

" SEC. 2. Before the auditor shall issue such license to any agent of any company incorporated by any State of the United States, there shall be filed in his office a copy of the charter of such company, and a statement, made under oath of its president or secretary, showing its assets and liabilities, and distinctly showing the amount of its capital stock, and how the same has been paid, and of what the assets of the company consist, the amount of losses due and unpaid by said company, if any, and all other claims against said company or other indebtedness, due or not due; and such statement shall show that the company is possessed of an actual capital of at least $150,000, either in cash or in safe investments, exclusive of stock notes. Upon the filing of the statement above provided, and furnishing the auditor with satisfactory evidence of such capital, it shall be his duty to issue license to such agent or agents as the company may direct to carry on the business of expressing or transportation in this State.

" SEC. 3. Before the auditor shall issue license to any agent of any express or transportation company incorporated by any

foreign government, or any association or partnership acting under the laws of any foreign government, there shall be filed in his office a statement setting forth the act of incorporation or charter, or the articles of association, or by-laws under which they act, and setting forth the matters required by the preceding section of this act to be specified; and satisfactory evidence shall be furnished to the auditor that such company has on deposit in the United States, or has invested in the stock of some one or more of the United States, or in some safe dividend-paying stocks in the United States, the sum of $150,000, which statement shall be verified by the oath of the president of such company, its general agent in the United States, or the agent applying for such license; and upon the due filing of such statement, and furnishing the auditor with satisfactory evidence of such deposit or investment, it shall be his duty to issue such license to the agent or agents applying for the same.

" SEC. 4. The statements required by the foregoing sections shall be renewed in each year thereafter, either in the months of January or July; and the auditor, on being satisfied that the capital or deposit, consisting of cash securities or investments as provided in this act, remain secure to the amount of $150,000, shall renew such license."

" SEC. 8. Any person who shall set up, establish, carry on, or transact any business for any transportation or express company not incorporated by the law of this State, without having obtained license as by this act required, or who shall in any way violate the provisions of this act, shall be fined for every such offence not less than one hundred nor more than five hundred dollars, at the discretion of a jury, to be recovered as like fines in other cases. . . ."

" SEC. 9. For any license issued by the auditor under this act, and for each renewal thereof, he shall be allowed the sum of $2.50, to be paid by the agent or company taking out such license." Myer's Supplement, 228.

An amendatory act passed in 1866 raised the license fee to five dollars, and imposed a fee of five dollars for filing copy of charter, and ten dollars for filing an original or annual

statement. The Supreme Court of Kentucky in disposing of the case gave the following opinion (*Crutcher* v. *Commonwealth*, 40 Amer. & Eng. Railroad Cases, 29 ; 12 So. West. Reporter, 141):

" It seems to us that the case of *Woodward* against *The Commonwealth*,[1] in which the statute appears in full, (decided by this court at its last term,) determines the question now presented. Counsel for the appellant now claims that the statute of this State is invalid, as its effect is to regulate commerce among the several States. The agent of the express company was fined for not paying to the auditor a fee of five dollars, or rather, for failing to take out a license required by the act regulating the agencies of foreign express companies, passed in March, 1860, and amended by the act of 1866. That the company of which the appellant is agent is a corporation created by the laws of New York, doing business in this State as a carrier of goods, wares and merchandise is conceded, and that it transports goods, etc., out of the State into other States, and all other species of property usually incident to such transportation is admitted. It appears that at least fifty per cent of the business done by this agent consists in the carrying of goods from the place of his agency, Frankfort, to other States. That the carrying and transportation of goods from one State to another is a branch of interstate commerce is not controverted, but it is claimed that there is nothing in the legislation imposing on those who desire to act as the agents of this foreign corporation the burden of paying to the auditor the fee of five dollars for recording his agency, or rather, for issuing him his license to act as such.

" The statute was enacted for the benefit of the citizens of the State, under which the auditor is required to have satisfactory evidence of the ability and solvency of the corporation to do that which it has undertaken to do by virtue of its act of incorporation. Those who intrust to its custody the transportation of their property are entitled to some security that its undertaking will be performed, and we find no law of

---

[1] 35 Amer. and Eng. Railroad Cases, 498; 9 Ky. Law Reporter, 670.

Congress, or any constitutional provision, that would deny to the State the right to impose such a burden upon those who undertake the discharge of such responsible duties. There is no discrimination made between corporations doing a like business; and the State, although the appellant's company is a foreign corporation, has the right to license the business and calling of this agent as it would that of the lawyer or merchant whose business is confined to the State alone."

The court then referred to the cases of *Smith* v. *Alabama*, 124 U. S. 465, and to *Nashville, Chattanooga &c. Railway* v. *Alabama*, 128 U. S. 96, and concluded as follows: "We cannot perceive how any burden has been placed by the State upon interstate commerce by the provisions of the enactment in question, and must therefore affirm the judgment."

*Mr. W. W. Macfarland* for plaintiff in error.

*Mr. James P. Helm* (with whom was *Mr. Helm Bruce* on the brief) for defendant in error.

We suppose that the only serious question involved in the case is, as to whether or not the State has the power to require that all express companies doing business in the State shall have an actual capital of at least $150,000. If it has the power to require this, then it unquestionably has the power to require that some officer of the State shall be satisfied of this fact by the filing with him of a sworn statement showing the fact. And we suppose there cannot be any question but that the State has the right to require that the charter of the corporation doing business in the State, and which charter fixes the rights and powers, and often the liabilities of the corporation, shall be made known to the people of this State who are to deal with the corporation, by filing a copy of said charter in a public office of the State.

And we understand it to be the settled law that where a State has the right to make such requirements as these, which call for the performance of duties on the part of state officers, it has also the right to require that reasonable fees shall be paid by the party seeking the performance of these offices, to

cover the cost and to make reasonable compensation to the officers for the services performed. *Smith* v. *Alabama*, 124 U. S. 465.

We do not deny that the business done by an express company is commerce; nor that it is well settled that a State cannot charge a person engaged in interstate commerce, for the privilege of coming into the State to do business. And we are familiar with the line of decisions holding that a State cannot tax the occupation of carrying on interstate commerce. But the great majority of these cases have been cases involving the validity of tax laws, which are manifestly not laws enacted by virtue of the State's police power.

As these cases involving the validity of tax laws could not, in the very nature of the case, involve a consideration of the nature and extent of the State's police power, except by way of illustration, therefore, inasmuch as the present case is not a tax case, but is a case in which the statute of the State is claimed to be valid under the police power of the State, we derive more assistance and instruction from the decisions of this court, wherein the court has been called upon to decide expressly whether or not a given act by a State was a valid exercise of the police power of the State, than we do from the class of cases above referred to, where the question of police power was not and could not have been directly involved.

For these reasons it seems to us that the cases of *Brown* v. *Maryland*, 12 Wheat. 419; *The Passenger Cases*, 7 How. 283; *State Freight Tax Case*, 15 Wall. 232; *Railroad Gross Receipts Case*, 15 Wall. 284; *Florida Telegraph Case*, 96 U. S. 1; *Texas Telegraph Case*, 105 U. S. 460; *Massachusetts Telegraph Case*, 125 U. S. 530; *Leloup* v. *Mobile*, 127 U. S. 640; *Moran* v. *New Orleans*, 112 U. S. 69; *Gloucester Ferry Co.* v. *Pennsylvania*, 114 U. S. 196; and *Picard* v. *Pullman Car Co.*, 117 U. S. 34, are not nearly so instructive in the consideration of the case at bar as are such cases as *New York* v. *Miln*, 8 Pet. 119; *The License Cases*, 5 How. 504; *Smith* v. *Alabama*, 124 U. S. 465; *Patterson* v. *Kentucky*, 97 U. S. 501; *Railroad Company* v. *Alabama*, 128 U. S. 96, and others of that character.

However courts and text-writers may differ as to the definition of the police power of a State, all agree that such a power does exist in the States; that it was never surrendered to Congress; that it is absolutely essential to the existence of the States, and that it embraces the power to make all needful regulations for the protection of its citizens. It is well that no constitution, or fixed law of any kind, ever attempted to define this power. It must always be sufficient to meet the exigencies of the times, whatever they may be, or the government must perish; and, as no human mind can comprehend the future, none can tell what may or may not become necessary to meet its requirements. The habits and customs of people, their pursuits, their manner of conducting business, their means of communication, differ so widely at different times that it is absolutely necessary that governments should have a power to meet the exigencies of the times. And in a government like ours, unique in history, where in every State there are two coexistent governments, where every citizen is at one and the same time the citizen of two governments, the subject of two sovereignties; and when we recollect that there is no isolated fact, no solitary event, but that every occurrence is connected directly or collaterally with countless others, we say, that when these considerations are remembered, one cannot fail to recognize the danger of testing by *extreme cases* these independent powers of distinct sovereignties governing the same people at the same time; the danger in insisting that the exercise in a certain manner of a given power by one of these governments is necessarily invalid, because it may be seen that by the application of the same power in an extreme case of kindred nature some object might be effected which is more legitimately the subject of a different power in the other government.

Whatever may be the correct statement of the view now taken by this court on the question of the *exclusiveness* of the power of Congress over interstate commerce, it is, of course, remembered that at one time the majority of this court held that the grant of power to Congress to regulate interstate commerce did not exclude the power of the States in that

respect so long as Congress remained silent; but that, whenever Congress spoke, its dictum was supreme. This was the principle on which the majority of the court decided the case of *Pierce* v. *New Hampshire,* one of the "*License Cases,*" 5 Howard, 564, where this view was most ably presented by Chief Justice Taney, (pp. 578, etc.;) and where he and Justice Catron (p. 603) seem to us to show very clearly that such was the view of Chief Justice Marshall, as shown by his opinions in *Gibbons* v. *Ogden,* 9 Wheat. 1, and *Willson* v. *Blackbird Creek Marsh Company,* 2 Pet. 241.

The court seems now, however, to have settled that Congress alone has the power to "regulate commerce" in matters susceptible of general and uniform regulation; but that in matters which are affected by local considerations the power to "regulate commerce" is possessed by both the Federal and State legislatures, subject, however, to the modification that whenever Congress speaks on the subject that is the supreme law. *Philadelphia Steamship Co.* v. *Pennsylvania,* 122 U. S. 326; *Robbins* v. *Shelby Taxing District,* 120 U. S. 489, 492, 493. In other words, in matters best susceptible of local regulation the States have concurrent power with Congress to pass laws that are directly and unquestionably regulations of interstate commerce, and are intended as such; but, as to matters susceptible of uniform regulation, the power to pass laws, the object of which is to regulate interstate commerce, is in Congress alone.

But even upon a matter which might be said to be susceptible of uniform regulation, under a law the object of which was to "regulate commerce," the State may make a *police* regulation which may affect it, but which, if it appears to be a *bona fide* police regulation and not a mere covered attempt to regulate commerce, will still be valid unless a conflict arises between this regulation and some regulation by Congress under its commercial power. *New York* v. *Miln,* 11 Pet. 102; *Smith* v. *Alabama,* 124 U. S. 465; *Railroad Co.* v. *Alabama,* 128 U. S. 96.

No question can be made of the good faith of the State in requiring evidence that the foreign corporation doing business

within it is solvent. Such a law is not in conflict with any law of Congress. Does Congress by its silence mean to say that it will not make any regulation on this subject, and that no State shall have the right to do so; but that any corporation may go into a foreign State where it is not known, either as to the extent of its legal or financial powers or as to the agents that are accredited by it, and may then refuse to make known any of these facts, and insist on carrying on this important business and making important contracts with, and securing valuable property of the citizens of this State, though it (the corporation) may be utterly irresponsible? Surely this cannot have been the intention of Congress. On the contrary, it must be presumed that Congress understood the propriety and necessity of such regulations, and left them to the States to make, according to the character of the corporations concerned and the necessities of the case.

Mr. Justice Bradley, after stating the case, delivered the opinion of the court.

We regret that we are unable to concur with the learned Court of Appeals of Kentucky in its views on this subject. The law of Kentucky, which is brought in question by the case, requires from the agent of every express company not incorporated by the laws of Kentucky a license from the auditor of public accounts, before he can carry on any business for said company in the State. This, of course, embraces interstate business as well as business confined wholly within the State. It is a prohibition against the carrying on of such business without a compliance with the state law. And not only a license required to be obtained by the agent, but a statement must be made and filed in the auditor's office showing that the company is possessed of an actual capital of $150,000, either in cash or in safe investments, exclusive of stock notes. If the subject was one which appertained to the jurisdiction of the state legislature, it may be that the requirements and conditions of doing business within the State would be promotive of the public good. It is clear, however, that it

would be a regulation of interstate commerce in its application to corporations or associations engaged in that business; and that is a subject which belongs to the jurisdiction of the national and not the state legislature. Congress would undoubtedly have the right to exact from associations of that kind any guarantees it might deem necessary for the public security, and for the faithful transaction of business; and as it is within the province of Congress, it is to be presumed that Congress has done, or will do, all that is necessary and proper in that regard. Besides, it is not to be presumed that the State of its origin has neglected to require from any such corporation, proper guarantees as to capital and other securities necessary for the public safety. If a partnership firm of individuals should undertake to carry on the business of interstate commerce between Kentucky and other States, it would not be within the province of the state legislature to exact conditions on which they should carry on their business, nor to require them to take out a license therefor. To carry on interstate commerce is not a franchise or a privilege granted by the State; it is a right which every citizen of the United States is entitled to exercise under the Constitution and laws of the United States; and the accession of mere corporate facilities, as a matter of convenience in carrying on their business, cannot have the effect of depriving them of such right, unless Congress should see fit to interpose some contrary regulation on the subject.

It has frequently been laid down by this court that the power of Congress over interstate commerce is as absolute as it is over foreign commerce. Would any one pretend that a state legislature could prohibit a foreign corporation, — an English or a French transportation company, for example, — from coming into its borders and landing goods and passengers at its wharves, and soliciting goods and passengers for a return voyage, without first obtaining a license from some state officer, and filing a sworn statement as to the amount of its capital stock paid in? And why not? Evidently because the matter is not within the province of state legislation, but within that of national legislation. *Inman Steamship Co.*

v. *Tinker*, 94 U. S. 238. The prerogative, the responsibility and the duty of providing for the security of the citizens and the people of the United States in relation to foreign corporate bodies, or foreign individuals with whom they may have relations of foreign commerce, belong to the government of the United States, and not to the governments of the several States; and confidence in that regard may be reposed in the national legislature without any anxiety or apprehension arising from the fact that the subject matter is not within the province or jurisdiction of the state legislatures. And the same thing is exactly true with regard to interstate commerce as it is with regard to foreign commerce. No difference is perceivable between the two. *Telegraph Co.* v. *Texas*, 105 U. S. 460; *Gloucester Ferry Co.* v. *Pennsylvania*, 114 U. S. 196, 205, 211; *Phila. Steamship Co.* v. *Pennsylvania*, 122 U. S. 326, 342; *McCall* v. *California*, 136 U. S. 104, 110; *Norfolk & Western Railroad* v. *Pennsylvania*, 136 U. S. 114, 118. As was said by Mr. Justice Lamar, in the case last cited, "It is well settled by numerous decisions of this court, that a State cannot under the guise of a license tax, exclude from its jurisdiction a foreign corporation engaged in interstate commerce, or impose any burdens upon such commerce within its limits."

We have repeatedly decided that a state law is unconstitutional and void which requires a party to take out a license for carrying on interstate commerce, no matter how specious the pretext may be for imposing it. *Pickard* v. *Pullman Southern Car Co.*, 117 U. S. 34; *Robbins* v. *Shelby County Taxing District*, 120 U. S. 489; *Leloup* v. *Mobile*, 127 U. S. 640; *Asher* v. *Texas*, 128 U. S. 129; *Stoutenburgh* v. *Hennick*, 129 U. S. 141; *McCall* v. *California*, 136, U. S. 104; *Norfolk & Western Railroad Co.* v. *Pennsylvania*, 136 U. S. 114.

As a summation of the whole matter it was aptly said by the present Chief Justice in *Lyng* v. *Michigan*, 135 U. S. 161, 166 : " We have repeatedly held that no State has the right to lay a tax on interstate commerce in any form, whether by way of duties laid on the transportation of the subjects of that commerce, or on the receipts derived from that transportation, or on the occupation or business of carrying it on, for the rea-

son that taxation is a burden on that commerce, and amounts to a regulation of it, which belongs solely to Congress.".

We do not think that the difficulty is at all obviated by the fact that the express company, as incidental to its main business, (which is to carry goods between different States,) does also some local business by carrying goods from one point to another within the State of Kentucky. This is, probably, quite as much for the accommodation of the people of that State as for the advantage of the company. But whether so or not, it does not obviate the objection that the regulations as to license and capital stock are imposed as conditions on the company's carrying on the business of interstate commerce, which was manifestly the principal object of its organization. These regulations are clearly a burden and a restriction upon that commerce. Whether intended as such or not they operate as such. But taxes or license fees in good faith imposed exclusively on express business carried on wholly within the State would be open to no such objection.

The case is entirely different from that of foreign corporations seeking to do a business which does not belong to the regulating power of Congress. The insurance business, for example, cannot be carried on in a State by a foreign corporation without complying with all the conditions imposed by the legislation of that State. So with regard to manufacturing corporations, and all other corporations whose business is of a local and domestic nature, which would include express companies whose business is confined to points and places wholly within the State. The cases to this effect are numerous. *Bank of Augusta* v. *Earle*, 13 Pet. 519; *Paul* v. *Virginia*, 8 Wall. 168; *Liverpool Insurance Company* v. *Massachusetts*, 10 Wall. 566; *Cooper Manufacturing Company* v. *Ferguson*, 113 U. S. 727; *Phila. Fire Association* v. *New York*, 119 U. S. 110.

But the main argument in support of the decision of the Court of Appeals is that the act in question is essentially a regulation made in the fair exercise of the police power of the State. But it does not follow that everything which the legislature of a State may deem essential for the good order

of society and the well being of its citizens can be set up against the exclusive power of Congress to regulate the operations of foreign and interstate commerce. We have lately expressly decided in the case of *Leisy* v. *Hardin*, 135 U. S. 100, that a state law prohibiting the sale of intoxicating liquors is void when it comes in conflict with the express or implied regulation of interstate commerce by Congress, declaring that the traffic in such liquors as articles of merchandise between the States shall be free. There are, undoubtedly, many things which in their nature are so deleterious or injurious to the lives and health of the people as to lose all benefit of protection as articles or things of commerce, or to be able to claim it only in a modified way. Such things are properly subject to the police power of the State. Chief Justice Marshall in *Brown* v. *Maryland*, 12 Wheat. 419, 443, instances gunpowder as clearly subject to the exercise of the police power in regard to its removal and the place of its storage; and he adds: "The removal or destruction of infectious or unsound articles is, undoubtedly, an exercise of that power, and forms an express exception to the prohibition we are considering. Indeed, the laws of the United States expressly sanction the health laws of a State." Chief Justice Taney in the *License Cases*, 5 How. 504, 576, took the same distinction when he said: "It has, indeed, been suggested, that, if a State deems the traffic in ardent spirits to be injurious to its citizens, and calculated to introduce immorality, vice and pauperism into the State, it may constitutionally refuse to permit its importation, notwithstanding the laws of Congress; and that a State may do this upon the same principles that it may resist and prevent the introduction of disease, pestilence and pauperism from abroad. But it must be remembered that disease, pestilence and pauperism are not subjects of commerce, although sometimes among its attendant evils. They are not things to be regulated and trafficked in, but to be prevented, as far as human foresight or human means can guard against them. But spirits and distilled liquors are universally admitted to be subjects of ownership and property, and are therefore subjects of exchange, barter

and traffic, like any other commodity in which a right of property exists.".

But whilst it is only such things as are clearly injurious to the lives and health of the people that are placed beyond the protection of the commercial power of Congress, yet when that power, or some other exclusive power of the Federal government, is not in question, the police power of the State extends to almost everything within its borders; to the suppression of nuisances; to the prohibition of manufactures deemed injurious to the public health; to the prohibition of intoxicating drinks, their manufacture or sale; to the prohibition of lotteries, gambling, horse-racing or anything else that the legislature may deem opposed to the public welfare. *Bartemeyer* v. *Iowa*, 18 Wall. 129; *Beer Company* v. *Massachusetts*, 97 U. S. 25; *Fertilizing Co.* v. *Hyde Park*, 97 U. S. 659; *Stone* v. *Mississippi*, 101 U. S. 814; *Foster* v. *Kansas*, 112 U. S. 201; *Mugler* v. *Kansas*, 123 U. S. 623; *Powell* v. *Pennsylvania*, 127 U. S. 678; *Kidd* v. *Pearson*, 128 U. S. 1; *Kimmish* v. *Ball*, 129 U. S. 217.

It is also within the undoubted province of the state legislature to make regulations with regard to the speed of railroad trains in the neighborhood of cities and towns; with regard to the precautions to be taken in the approach of such trains to bridges, tunnels, deep cuts and sharp curves; and, generally, with regard to all operations in which the lives and health of people may be endangered, even though such regulations affect to some extent the operations of interstate commerce. Such regulations are eminently local in their character, and, in the absence of congressional regulations over the same subject, are free from all constitutional objections, and unquestionably valid.

In view of the foregoing considerations, and of the well-considered distinctions that have been drawn between those things that are and those things that are not, within the scope of commercial regulation and protection, it is not difficult to arrive at a satisfactory conclusion on the question now presented to us. The character of police regulation, claimed for the requirements of the statute in question, is certainly not

such as to give them a controlling force over the regulations of interstate commerce which may have been expressly or impliedly adopted by Congress, or such as to exempt them from nullity when repugnant to the exclusive power given to Congress in relation to that commerce. This is abundantly shown by the decisions to which we have already referred, which are, clear to the effect that neither licenses nor indirect taxation of any kind, nor any system of state regulation, can be imposed upon interstate any more than upon foreign commerce; and that all acts of legislation producing any such result are, to that extent, unconstitutional and void. And as, in our judgment, the law of Kentucky now under consideration, as applied to the case of the plaintiff in error, is open to this objection, it necessarily follows that the judgment of the Court of Appeals must be reversed.

*The judgment is reversed accordingly, and the cause remanded for further proceedings not inconsistent with this opinion.*

THE CHIEF JUSTICE and MR. JUSTICE GRAY dissented.

MR. JUSTICE BROWN, not having been a member of the court when the case was argued, took no part in the decision.