### WALTER WOESSNER v. H. T. COTTAM & COMPANY, LIMITED.

Decided November 9, 1898.

1. **Constitutional Law—Foreign Corporation—Franchise Tax—Interstate Commerce.**

The Act of May 7, 1897, imposing a franchise tax upon corporations and forfeiting the right of a foreign corporation to do business in this State for nonpayment thereof, is unconstitutional as applied to a mercantile company, incorporated and having its place of business in another State, and whose business consists in selling and shipping goods to merchants in Texas, on orders sent to it by mail or taken by its drummers.

APPEAL from Travis. Tried below before Hon. R. E. BROOKS.

*M. C. Granberry,* for appellant.

*J. L. Peeler,* for appellee.

COLLARD, ASSOCIATE JUSTICE.—This suit was instituted the 23d of May, 1898, by appellee, H. T. Cottam & Co., Limited, a corporation incorporated under the laws of Louisiana, against appellant, on a note executed by him to appellee March 1, 1897, for $1130.30, due on or before the 1st day of April, 1897, payable in New Orleans, La., bearing 10 per cent interest per annum from date, and providing for 10 per cent attorney's fees for collection.

Defendant answered, claiming that plaintiff was a foreign corporation; that on September 19, 1892, the company filed with the Secretary of State a copy of its articles of incorporation, but that on May 1, 1898, it refused to pay to the Secretary of State the franchise tax of $110 due by it, as required by article 5243i of Sayles' Civil Statutes, notwithstanding demand for the tax was duly made, and that it still refuses to pay the tax; that on May 20, 1898, before suit, the Secretary of State, because of the refusal to pay the tax, forfeited the rights of appellee to do business in Texas and to sue or defend in the courts of this State, as required by the article of the statutes before referred to. Prayer that no judgment be entered against defendant.

The case was submitted to the court upon an agreed statement of facts under article 1293, Sayles' Civil Statutes, and judgment was rendered for appellee in the sum of $1398.70, from which this appeal is taken.

The agreed statement of facts upon which the case was tried is as follows:

"1. That H. T. Cottam & Co., Limited, is a foreign corporation, incorporated and existing under the laws of the State of Louisiana, its capital stock being $200,000, and its office and place of business being in the city of New Orleans, in said State of Louisiana; that plaintiff has been so incorporated and existing ever since the 11th day of August, 1892, and that during all of such time it has been and is now engaged in the business of interstate commerce — that is, dealing by the wholesale in goods manufactured by it and other parties in States other than Texas, and selling at and shipping such goods from New Orleans, La., into Texas, to merchants therein; sometimes said goods being sold on orders taken by plaintiff's traveling salesmen in Texas, such salesmen sending such orders to plaintiff at New Orleans, La., to be accepted and filled by it there, and sometimes said goods being sold upon orders contained in letters written in Texas, by merchants therein, to plaintiff at New Orleans, La., to be accepted and filled by it there, all of said orders, whether received through traveling salesmen or direct from Texas merchants, being subject to the approval, acceptance, and filling only by plaintiff, in New Orleans, La.

"2. That said H. T. Cottam & Co., Limited, has no office or place of business in Texas.

"3. That during the entire months of February and March, 1897, said defendant, Walter Woessner, was a merchant at the town of Beeville, in the State of Texas; that on or about February 2, 1897, one of the traveling salesmen of plaintiff received a written order from defendant at Beeville, Texas, for thirty-five barrels of American refinery granulated sugar, which sugar was manufactured by plaintiff in the State of Louisiana and worth $565.15; that at the time of receiving such order said salesman forwarded the same through due course of mail to plaintiff, and that on or about February 4, 1897, plaintiff received and accepted said order in New Orleans, La., and in compliance with same shipped, from New Orleans, La., to defendant at Beeville, Texas, said sugar, which was received by him on or about February 10, 1897.

"4. That on or about February 15, 1897, defendant, at Beeville, Texas, wrote a letter to plaintiff, addressed it to New Orleans, La., asking it to immediately ship to him at Beeville, Texas, thirty-five additional barrels of sugar, which sugar was manufactured, by other parties than plaintiff, in the State of Louisiana, but owned by plaintiff, and was of the value of $565.15; that on receipt of said letter, to wit, on or about February 17, 1897, plaintiff, in New Orleans, La., accepted the order contained in said letter, and in compliance therewith shipped from New

Orleans, La., to defendant at Beeville, Texas, said sugar, which was received by him on or about February 21, 1897.

"5. That on March 1, 1897, the said Walter Woessner, at Beeville, Texas, for and in consideration of the seventy barrels of sugar described in paragraphs 3 and 4 of these facts, made, executed, and delivered to plaintiff his promissory note in writing, amounting to $1130.30, payable to the order of plaintiff, at its office in New Orleans, La., on or before the 1st day of April, drawing interest from date at the rate of 10 per cent per annum, and providing for 10 per cent additional on the principal and interest as collection fees, if placed in the hands of an attorney for collection or suit was brought thereon, said note being the same one herein sued on, and that the principal, interest, and collection fees specified in said note are unpaid and are now due and payable by defendant.

"6. That on the 19th day of September, 1892, plaintiff filed with the Secretary of State of Texas a duly certified copy of its articles of incorporation; that on or before the 1st day of May, 1898, plaintiff deliberately refused to pay said Secretary of State the franchise tax of $110 as required by article 5243i of Sayles' Texas Civil Statutes (1897), being a law passed by the regular session of the Twenty-fifth Legislature, chapter 120, approved May 15, 1897 (page 168 of the Acts of said Legislature), notwithstanding said Secretary of State at the proper time duly demanded the payment of said tax; that plaintiff still refuses to pay said tax or any part thereof, and now admits that it never will pay the same; that on the 20th day of May, 1898, and prior to the institution of this suit, said Secretary of State, because of such refusal, forfeited the right of plaintiff to do business in Texas, which forfeiture was consummated without judicial ascertainment, by said Secretary of State entering upon the margin of the ledger kept in his office relating to foreign corporations the word 'Forfeited,' giving the date of such forfeiture; and which law provides that any corporation whose right to do business may be thus forfeited shall be denied the right to sue or defend in any of the courts of Texas.

"7. That plaintiff refused to pay the tax mentioned in paragraph 6 of these facts, upon the sole ground that it was engaged in interstate commerce, and that such tax was a tax upon interstate commerce, and, therefore, unconstitutional and void."

*Opinion.*—The question presented by the record and briefs in this case is: Was the appellee, a foreign corporation, prohibited from carrying on interstate commerce in this State, as was done, and from maintaining the suit, because of failure to comply with the statute, article 5231i of Sayles' Civil Statutes, in reference to payment of franchise tax? Or is the statute referred to unconstitutional, as applied to interstate commerce? The Act of the Legislature containing the clause of the statute referred to was passed May 7, 1897, and became a law without the signature of the Governor. The article reads as follows:

"Article 5243i. Franchise Tax of Corporations.—Each and every private domestic corporation heretofore chartered under the laws of this State shall pay to the Secretary of State an annual franchise tax of ten dollars, on or before the first day of May of each year; and every such corporation which shall be hereafter chartered under the laws of this State shall also pay to the Secretary of State an annual franchise tax of ten dollars, the tax for the first year to be paid at the time such charter is filed, and the Secretary of State shall not be required or permitted to file such charter until such tax is paid, and each succeeding tax shall be paid on or before the first day of May of each year thereafter; providing, that any such corporation having an authorized capital stock of over fifty thousand dollars and less than a hundred thousand dollars shall pay an annual franchise tax of twenty dollars; and every such corporation having an authorized capital stock of one hundred thousand dollars and less than two hundred thousand dollars shall pay an annual franchise tax of thirty dollars, and every such corporation having an authorized capital stock of two hundred thousand dollars or more shall pay an annual franchise tax of fifty dollars.

"Each and every foreign corporation heretofore authorized to do business in this State under the laws of this State shall, on or before the first day of May of each year, and each and every such corporation which shall hereafter be so authorized to do business in this State, shall, at the time so authorized, and on or before the first day of May of each year thereafter, pay to the Secretary of State the following franchise tax:

"Every such corporation having an authorized capital stock of twenty-five thousand dollars or less, an annual franchise tax of twenty-five dollars.

"Every such corporation having an authorized capital stock of more than twenty-five thousand dollars and not exceeding one hundred thousand dollars, an annual franchise tax of one hundred dollars.

"Every such corporation having an authorized capital stock of over one hundred thousand dollars, an annual franchise tax of one hundred dollars, and in addition thereto, an annual franchise tax of one dollar on every ten thousand dollars of authorized capital stock, over and above one hundred thousand dollars, and not exceeding one million dollars; and if such authorized capital stock exceed one million dollars, then such corporation shall pay a still further additional tax of one dollar for every one hundred thousand dollars over and above one million dollars.

"Any corporation, either domestic or foreign, which shall fail to pay the tax provided for in this article at the time specified herein, shall, because of such failure, forfeit its right to do business in this State, which forfeiture shall be consummated without judicial ascertainment by the Secretary of State entering upon the margin of the ledger kept in his office relating to such corporations, the word 'Forfeited,' giving the date of such forfeiture, and any corporation whose right to do business may be thus forfeited shall be denied the right to sue or defend in any of the

courts of this State, and in any suit against such corporation on a cause of action arising before such forfeiture no affirmative relief may be granted to such defendant corporation, unless its right to do business is revived, as provided in article 5243j of this chapter. All transportation companies now paying an annual income tax on their gross receipts in this State shall be exempted from the franchise tax above imposed."

It can not be doubted that the note sued on, being executed for purchases of goods sold to appellant in Texas by appellee in Louisiana, related to interstate commerce. Miller v. Goodman, 91 Texas, 41; 40 S. W. Rep., 718.

It is too well settled now, by numerous decisions of this State and the Supreme Court of the United States, that the State Legislature has no power to regulate interstate commerce or to place restrictions upon it, to be longer an open question. Miller v. Goodman, supra, and authorities cited; Allen v. Tyson-Jones Buggy Co., 91 Texas, 24; Crutcher v. Kentucky, 141 U. S., 58, and authorities cited; Pickard v. Car Co., 117 U. S., 34; 120 U. S., 489; 124 U. S., 640; 128 U. S., 129; 129 U. S., 141; 136 U. S., 104; 136 U. S., 114.

The statute, in so far as it attempts to lay a tax on interstate commerce, is unconstitutional and void. There is an essential difference in this case, and where many foreign corporations attempt to do business in the State of a local character, as where they actually carry on a local business or trade, such as insurance business, loaning and building associations, manufacturing and other business, which must and can only be local in character, when it has been held that they can not set up such business and carry it on without complying with State laws. Crutcher v. Kentucky, 141 U. S., 59, and authorities cited.

A foreign corporation doing a domestic local business in the State must become domiciled here by complying with the State laws and paying taxes, as is required of ordinary citizens.

In so far as the statute in question relates to interstate commerce, it is void and can not be enforced. It can not be applied to the transactions involved in this suit.

The judgment of the lower court is affirmed.

*Affirmed.*

Writ of error refused.