PITTSBURGH, CINCINNATI, CHICAGO & ST. LOUIS RAILWAY COMPANY v. CITY OF HARTFORD CITY.

[No. 20,816. Filed November 26, 1907. Rehearing denied July 2, 1908.]

1. POLICE POWER.—*Arbitrary Exercise of.*—*Legislative Discretion.*—Although the legislature has a very wide discretion in its exercise of the police power, still where such exercise of power is arbitrary or plainly unreasonable, it will be declared invalid by the courts. p. 677.

2. RAILROADS.—*Street Crossing Lights.*—*Ordinances.*—A municipal ordinance requiring a railroad to maintain lights at its street crossings but failing to fix the height of such lights, is not invalid on the ground that such lights would prevent the engineer and fireman from seeing persons on or near such crossings. p. 678.

3. RAILROADS.—*Street Crossing Lights.—Ordinances.—Interstate Commerce.*—A municipal ordinance requiring an interstate railroad company to maintain lights at its street crossings is not invalid on the ground that it constitutes an unlawful regulation of interstate commerce, where there is no congressional legislation on the subject. p. 678.

4. MUNICIPAL CORPORATIONS.—*Police Power.—Ordinances.—Public Hearings.*—Citizens are not entitled to a hearing from municipal councils as to ordinances affecting the exercise of the police power. pp. 680, 683.

5. CONSTITUTIONAL LAW.—*Confiscation.—Railroads.—Street Crossing Lights.*—A municipal ordinance requiring a railroad company to maintain lights at its street crossings, is not invalid on the ground that it is a virtual taking of such company's property without compensation. p. 680.

6. MUNICIPAL CORPORATIONS. —*Ordinances.—Street Crossing Lights. —Kinds.*—An ordinance requiring a railroad company to maintain electric lights at its street crossings for five minutes before the arrival of its trains is not invalid on the grounds that the statute delegating such municipal power permitted the requiring of other kinds of light also, and that five minutes constitutes an unreasonable length of time. p. 680.

7. CONSTITUTIONAL LAW.—*Special Legislation.—Cities.*—A statute giving cities not operating under special charters power to require railroad companies to light their street crossings is not invalid on the ground that the same power was not granted to other cities. p. 681.

8. MUNICIPAL CORPORATIONS. — *Ordinances. — Railroads. — Street Crossing Lights.*—A municipal ordinance requiring a railroad company to maintain, at its street crossing, a light "of sufficient power to light the entire of said Walnut street crossing," is not so indefinite as to invalidate same, the evident construction being the requirement of a light—not stronger than those used by the city—sufficient to enable travelers to see the crossing and the way across. p. 681.

9. SAME.—*Ordinances.—Railroads.—Lights at Certain Crossings.*—Municipal corporations have the power to designate by ordinance the particular crossings at which railroad companies shall maintain lights. p. 682.

From Grant Circuit Court; *H. J. Paulus,* Judge.

Prosecution by the City of Hartford City against the Pittsburgh, Cincinnati, Chicago & St. Louis Railway Company. From a judgment for plaintiff, defendant appeals. *Affirmed.*

*George E. Ross,* for appellant.

*L. F. Sprague,* for appellee.

GILLETT, J.—Action by appellee against appellant for the violation of a city ordinance. The charge is that the defendant violated said ordinance ''by then and there unlawfully failing, neglecting and refusing, while operating said railway as aforesaid, to keep and maintain an electric light at a point where said tracks cross Walnut street in said city, of sufficient power to light the entire of said Walnut street crossing, but not to exceed the power of the electric lights in use in said city.'' The ordinance requires that the company shall keep and maintain electric lights at certain points where its tracks intersect streets in said city, of sufficient power to light ''the entire of said crossings,'' but not to exceed the power of the electric lights used in said city, and also to keep said lights supplied with a sufficient amount of electric current, and burning for five minutes before the arrival of each and every engine and train of cars at said crossing, and until after such engine and train of cars have departed, at all times in the night-time when there is no moon, or the moon is obscured. Appellant answered in seven paragraphs. Demurrers were sustained to the last four of said paragraphs. The fourth paragraph challenged, in general terms, the reasonableness of said ordinance. The fifth paragraph alleged that defendant was a large taxpayer in said city, and that said lights would be of no benefit to it, but for the exclusive use and benefit of those using said streets. The paragraph concluded with a charge that the requirement of the ordinance amounted to a taking of defendant's property without just compensation and without due process of law, contrary to the Constitution of the United States. The sixth paragraph set up the fact that defendant is a railroad company, organized and existing under the laws of Illinois, Indiana, Ohio, Pennsylvania and West Virginia, and as such is a common carrier of freight and passengers between the states, and is also en-

gaged in transporting United States mails; that it is necessary that all of defendant's locomotives used in carrying on said business should be equipped with a headlight, to enable the engineman and fireman properly to perform their duties, and that the existence of an electric light at said street crossing would impair the efficiency of said headlights, and obscure and diminish, and in effect destroy, the light therefrom, and prevent the engineman and fireman from performing their duties, thus endangering defendant's trains, and the passengers and freight carried thereon; that an electric light would prevent persons using said crossing from seeing the headlight upon an approaching locomotive, and would hinder and prevent defendant's servants operating said trains from seeing persons and objects along its tracks, thus increasing the danger to those using said street, and incapacitating defendant from the performance of its duties as a carrier of interstate commerce and United States mails. The seventh paragraph challenges the constitutional validity of said ordinance as a taking of property without just compensation and without due process of law, and it contains the averment that said ordinance was passed without affording appellant an opportunity to be heard relative thereto. The court found the facts specially, and filed conclusions of law thereon, which were adverse to appellant. A judgment against it followed, and from said judgment this appeal is prosecuted.

The constitutional objections which appellant's counsel urge to the ordinance are, for the most part, indicated by the last four paragraphs of answer. It appears to us that these questions are pretty well solved by the 1. consideration of whether the ordinance is so far reasonable, as an attempted exercise of the police power, that the court should, under the grant of authority found in the statute then in force (Acts 1893, p. 302, §5255 Burns 1908), defer to the determination of the local legislative authority as to the expediency of its requirement. It is true that the

courts will arrest an arbitrary or plainly unreasonable exercise of the police power, where there has been an attempt thereby to lay a burden upon a subject in the use or enjoyment of his property, yet, notwithstanding this, the courts recognize that, as respects the police power, there is a broad authority within the field of legislative discretion, wherein, as respects what is good and expedient, the lawmaking power is absolutely the master of its own discretion. The ordinance in question does not fix the height of the electric light, and appellant would be within the requirements of the ordinance if the light were located at such a height that the engineer would not be required to look directly toward it. This being so, we are of opinion, notwithstanding the broad allegations of the sixth paragraph of the answer, that the court knows enough of electric lighting to affirm that at the most there would be presented only a question of expediency, relative to what it would be wise to do in the premises, and the mere fact that we might be of opinion that the ordinance was in some measure unsuited to the attainment of its ostensible end, would not justify us in striking it down. It must be presumed that the purpose of the requirement in question is to, add to the security of life and limb, and the possibility that a traveler might unwittingly pass into danger at the crossing, particularly if in a conveyance, without real opportunity to safeguard himself by looking and listening, is too great to warrant us in holding that the light may not be required, even if its effect be to compel the engineer to run slowly or cautiously in approaching it.

Granting that the ordinance in question may in some degree affect interstate commerce, we are nevertheless of opinion that, as a local regulation designed to protect travelers upon the street, it was competent to establish the same. The railroad was built by the authority of the State, and, whether an interstate carrier or otherwise, the company must, so long as congress does not inter-

fere, submit to reasonable local regulations in the use of its property. Any other holding would substitute government by a board of directors for government by the representatives of the people. It was said in *Crutcher* v. *Kentucky* (1891), 141 U. S. 47, 11 Sup. Ct. 851, 35 L. Ed. 649, that it is "within the undoubted province of the state legislature to make regulations with regard to the speed of railroad trains in the neighborhood of cities and towns, with regard to the precautions to be taken in the approach by such trains to bridges, tunnels, deep cuts, and sharp curves; and generally with regard to all operations in which the lives and health of people may be endangered, even though such regulations affect to some extent the operations of interstate commerce. Such regulations are eminently local in their character, and, in the absence of congressional regulations over the same subject, are free from all constitutional objections, and unquestionably valid." In *Hennington* v. *Georgia* (1896), 163 U. S. 299, 16 Sup. Ct. 1086, 41 L. Ed. 166, the Federal Supreme Court upheld, against an interstate railroad, a statute of the state of Georgia forbidding the running of freight-trains on Sunday. In *Lake Shore, etc., R. Co.* v. *Ohio* (1899), 173 U. S. 285, 19 Sup. Ct. 465, 43 L. Ed. 702, that court upheld the right of the state to promote the convenience of local passengers, by requiring all railroads to stop three trains a day, should that many be run, at all cities or towns in the state of more than 3,000 inhabitants. In that case the court said: "The plaintiff in error accepted its charter subject necessarily to the condition that it would conform to such reasonable regulations as the state might from time to time establish that were not in violation of the supreme law of the land. In the absence of legislation by congress, it would be going very far to hold that such an enactment as the one before us was in itself a regulation of interstate commerce. It was for the state to take into consideration all the circumstances affecting passenger travel within its limits, and as far as practi-

cable make such regulations as were just to all who might pass over the road in question. * * * Any other view of the relations between the state and the corporation created by it would mean that the directors of the corporation could manage its affairs solely with reference to the interest of stockholders and without taking into consideration the interests of the general public.'' It was further held in that case that the statute authorizing railroad companies to carry the mails did not prohibit the enactment of reasonable police regulations by the state. See, also, *Village of St. Bernard* v. *Cleveland, etc., R. Co.* (1896), 4 Ohio Dec. 371; note to *People, ex rel.,* v. *Chicago, etc., R. Co.* (1906), 7 Am. and Eng. Ann. Cas. 1. Of course, the courts are

4. open to appellant to challenge the validity of the ordinance as an attempted exercise of the police power, but as the act was one of a legislative character, and was not judicial, appellant was not entitled to a hearing on the question whether the ordinance should be passed.

The ordinance does not amount to a taking of property without just compensation. The regulation being a just exercise of the police power, appellant must submit to

5. the requirement, even though it lays some expense or inconvenience upon it. There is too large a body of legislative regulations of this character, which have received judicial sanction by the highest courts, to make the proposition a debatable one.

The mere fact that the General Assembly has seen fit to give the common council the power to prescribe the character of the light—with respect to its being electric

6. or otherwise—and that the latter body has required that the lighting shall be done by electricity, affords no sufficient grounds for an overthrow of the ordinance. As was said in *Missouri, etc., R. Co.* v. *May* (1904), 194 U. S. 267, 24 Sup. Ct. 638, 48 L. Ed. 971: ''Great constitutional provisions must be administered with caution. Some play must be allowed for the joints of the machine, and it

must be remembered that legislatures are ultimate guardians of the liberties and welfare of the people in quite as great a degree as the courts.'' Nor does it appear to us that the common council exceeded its authority in requiring the light to be burning for five minutes before the arrival of a train. Such a provision as to the time that the light shall be burning is a very moderate one, and can well be defended on the ground that it is calculated to make it more certain that the duty will be performed.

The validity of the statute is questioned, in that it purports to be a grant of power to all cities not operating under a special charter. We may grant that this makes

7. the statute special in its character, but from this it does not follow that it is invalid. As long as the legislation is not of a character sufficiently radical to amount to the creation of a municipal corporation, within the prohibition of article 11, §13, of the state Constitution, we know of no constitutional provision, federal or state, which is offended by a mere difference in the extent of lawmaking power which is granted to different cities or towns. As applied to the statute in question, it may be said that each street and railroad intersection presents its own considerations for the determination of the municipal legislature, and it is no discrimination that such power is not given to every city, or that every such intersection in the State is not ordered lighted.

It is contended by appellant's counsel that the ordinance is within the condemnation of *Chicago, etc., R. Co.* v. *Town of Salem* (1906), 166 Ind. 71, because of the provi-

8. sion that the power shall not exceed that of the lights used by the city. In that case there was no standard fixed, except the shifting standard of the lights which the city might from time to time use, and it was held unreasonable to enforce by penalty a requirement that would compel the company to take notice of changes *dehors* the ordinance. Here the requirement is that the light shall be

"of sufficient power to light the entire of said Walnut street crossing." And the limitation thereon is designed merely to keep the ordinance from calling on the company to do more than the statute authorizes. In other words, if such limitation were not found in the words of the ordinance, it would still be subject to the statute. We are of opinion that in this respect the case is ruled by *Chicago, etc., R. Co.* v. *City of Crawfordsville* (1905), 164 Ind. 70.

The ordinance is not so indefinite in its requirement as to be invalid. Upon the hearing of such a case it would be the duty of the court to construe the ordinance, and we are of opinion that its legal effect is to require a light of sufficient power—not exceeding that used by the city—to enable a traveler, of good eyesight, in the night-time, and before going upon the crossing, to see the tracks at the point of intersection and the character of the way across the same. While it may be that a light of greater power than this might be required by the city, yet, as a matter of legal construction, any uncertainty must cut down the operation of the ordinance until it be brought within the limits of the clear requirements of the provision, and when so construed it must be said that the standard of duty is definite. See *Chicago, etc., R. Co.* v. *City of Crawfordsville, supra.*

We regard the complaint as sufficient. The statute specifically authorizes the city by ordinance or resolution to "provide what kind of lights the railroad company shall maintain," and, as a proper means to an authorized end, we are of opinion that it was proper for the common council to direct that a light be located at said street intersection. There is no available error in the record.

Judgment affirmed.

## ON PETITION FOR REHEARING.

Per Curiam.—The only question which we deem it important further to discuss relates to the insistence of appellant's counsel that there was a right to form issues 4. of fact regarding the necessity of the ordinance, and as to whether the exercise of the power was fair, honest and proper.

It is scarcely necessary to state that, as an exercise of a legislative power, pursuant to a proper delegation of authority, an ordinance of a city stands on the same general footing as an act of the legislature. See *Schmidt* v. *City of Indianapolis* (1907), 168 Ind. 631. It was stated in *Citizens Gas, etc., Co.* v. *Town of Elwood* (1888), 114 Ind. 332, 336, that an ordinance "means a local law, prescribing a general and permanent rule." In *Paulsen* v. *Portland* (1893), 149 U. S. 30, 38, 13 Sup. Ct. 750, 37 L. Ed. 637, it is said: "The city is a miniature state, the council is its legislature, the charter is its constitution; and it is enough if, in that, the power is granted in general terms, for when granted, it must necessarily be exercised subject to all limitations imposed by constitutional provisions."

Cases might be conceived of wherein a question of fact might be raised as a means of arresting a legislative act, as for instance, an inquiry might be made whether a law regulating the charges of a public service corporation amounted to a taking of property in the particular instance; but we regard it as a general rule that the determination by a legislative tribunal of open or debatable questions concerning what is expedient is not subject to review on questions of fact, provided the question is one within the competency of the legislative tribunal to determine. See *Spencer* v. *Merchant* (1888), 125 U. S. 345, 8 Sup. Ct. 921, 31 L. Ed. 763; *Paulsen* v. *Portland, supra; Fallbrook Irrigation District* v. *Bradley* (1896), 164 U. S. 112, 174, 17 Sup. Ct. 56, 41 L. Ed. 369; *French* v. *Barber Asphalt Pav. Co.* (1901),

181 U. S. 324, 21 Sup. Ct. 625, 45 L. Ed. 879; *Edwards* v. *Cooper* (1907), 168 Ind. 54.

The view that legislative action can in general be made to depend upon the varying opinions of juries concerning its necessity or propriety is wholly out of accord with the nature of a written law. This is illustrated by *Luther* v. *Borden* (1849), 7 How. 1, 41, 12 L. Ed. 581, wherein the Supreme Court of the United States used the following language: "The question as to the majority is a question of fact. It depends upon the testimony of witnesses, and if the testimony offered by the plaintiff had been received, the defendants had the right to offer evidence to rebut it; and there might, and probably would, have been conflicting testimony as to the number of voters in the state, and as to the legal qualifications of many of the individuals who had voted. The decision would, therefore, have depended upon the relative credibility of witnesses, and the weight of testimony; and as the case before the circuit court was an action at common law, the question of fact, according to the 7th amendment to the Constitution of the United States, must have been tried by the jury. In one case a jury might find that the constitution which the plaintiff supported was adopted by a majority of the citizens of the state, or of the voters entitled to vote by the existing law. Another jury in another case might find otherwise. And as a verdict is not evidence in a suit between different parties, if the courts of the United States have the jurisdiction contended for by the plaintiff, the question whether the acts done under the charter government during the period in contest are valid or not must always remain unsettled and open to dispute. The authority and security of the state governments do not rest on such unstable foundations." As was said in *Lusher* v. *Scites* (1870), 4 W. Va. 11, 14: "To exercise the power, the legislature must inform itself of the existence of the facts prerequisite to enable it to act on the subject. How it shall do so, and on what evidence, the

legislature alone must determine; and when so determined, it must conclude further inquiry by all other departments of the government; and the final action terminating in an act of legislation in due form, must of necessity presuppose and determine all the facts prerequisite to the enactment; and that, too, as fully and as effectually as a final judgment of a competent judicial tribunal of general jurisdiction would do in like case.''

In *DeCamp* v. *Eveland* (1854), 19 Barb. 81, 89, the court well observed: ''The constitution declares that the legislative power of the state is vested in the senate and assembly. This legislative power is the very highest attribute of sovereignty, and its depositary the embodiment and concentration of the whole political force of the body politic, with such restraints only as the charter of government has imposed. * * * The legislators are nowhere restrained, directed or limited in regard to the nature, grade or character of evidence which they must have as the basis of their action, or to guide them in their decisions. In some specified cases their power is limited, and in others conditional, depending upon the existence of certain facts. But they must necessarily decide whether such facts exist. Their general power to prescribe and regulate evidence for every other tribunal in the state has never been questioned, and it would present a singular anomaly if they were wanting in power to do the same for themselves, or to alter and change the same at pleasure; and it would be equally strange if any judicial tribunal in the state were permitted to review their decision upon the question of fact, on the existence of which their power to legislate in a particular case is made to depend. If such a thing were to be tolerated, it is not perceived why the existence of the fact in question may not, and in many cases must not, be proper to be submitted to a jury. It is believed that but few would be bold enough to contend for a principle pregnant with such absurd results.''

In reviewing the act of a legislative body, involving an

exercise of the police power, all reasonable assumptions must be indulged in its favor, and in determining upon its validity the court will treat the question as one of law, resort being had to extrinsic considerations only to the extent that the facts are, or may become, a matter of judicial knowledge.

We perceive no ground for the granting of a rehearing, and the petition is therefore overruled.