Commonwealth et al. *v.* Ferrari, Appellant.

Argued April 23, 1934.

Before Trexler, P. J., Keller, Cunningham, Baldrige, Stadtfeld, Parker and James, JJ.

*Edward O. Tabor,* for appellants.

*William Anderson, Jr.,* and with him *Wm. A. Schnader,* Attorney General, and *John A. Moss,* Deputy Attorney General, for appellee.

OPINION BY BALDRIGE, J., July 13, 1934:

The defendant company and its driver, Norman Ferrari, were arrested and convicted in a summary proceeding before a justice of the peace for the violation of the Pennsylvania Motor Vehicle Code of May 1, 1929, P. L. 905, as amended June 22, 1931, P. L. 751. On appeal, the conviction was sustained by the county court of Allegheny County.

Instead of taking testimony, the parties agreed to a stipulation of facts as a substitute for evidence, to which we are confined in our consideration of this case: Staten Island R. T. Co. v. Hite, 41 Pa. Superior Ct. 527, 529; Nevin Bus Lines, Inc. v. P. S. C., 99 Pa. Superior Ct. 370, 376. The relevant portion thereof which has been submitted to us is as follows:

"3. Ferrari, an agent of the Pittsburgh-Weirton Bus Company, on July 3, 1933, drove a Company White bus licensed in West Virginia and not licensed by Pennsylvania. It was driven from Weirton, West Virginia, to Pittsburgh, Pa. This bus was loaded with passengers originating in Weirton, West Virginia, and/or Steubenville, Ohio, and bound for Pittsburgh, Pa. This bus was driven regularly according to schedule, in place of the bus ordinarily used which was licensed in Pennsylvania but had broken down and was being repaired. Ferrari was arrested in Pennsylvania charged with violation of Section 401 of the Motor Vehicle Code, and the Pittsburgh-Weirton Bus Com-

pany was charged with violation of Section 409 (b) of the Motor Vehicle Code.''

The first position taken by the appellants is that section 401 (75 PS §91), providing for the registration, etc., of vehicles operated on the highway, imposes a direct and undue burden on, and interference with, interstate commerce, and is, therefore, unconstitutional.

Under article 1, section 8, clause 3, of the Constitution of the United States, Congress alone has the power to regulate commerce among the several states. But, in the absence of Federal legislation covering the subject, a state may impose, on vehicles using the highway in interstate commerce, regulations for protecting the public safety and convenience, and require the payment of such license fees as will reasonably defray the expenses of administering the regulations and fairly contribute to the cost of the public highways and facilities furnished by the state. It is a matter of universal knowledge that states expend large sums of money in constructing and maintaining highways, and that they rapidly deteriorate by the travel thereon of heavy and swiftly-moving buses, trucks and other motor vehicles. It is equally well known that these big busses occupy a large portion of the highway, and to them and their drivers is entrusted the safety of the life and limb of passengers, as well as others on the highways. That they should pay their just share of the facilities furnished by the public and essential to their use is only fair and equitable. The fees are not an excise on the privilege of engaging in interstate commerce, but are based on actual expenses incident to maintaining highways, enforcing statutes, etc.: Gloucester Ferry Co. v. Pa. 114 U. S. 196, 5 S. Ct. 826, 29 L. ed. 158; Di Santo v. Pa. 273 U. S. 34, 47 S. Ct. 267, 71 L. ed. 524; American Motor Coach System, Inc.

v. Phila. et al., 18 F. (2d) 991 (D. C. 1927), affirmed 28 F. (2d) 736 (CCA 3 1928).

If the fees are payable it is not claimed that they are unreasonable.

Our attention is directed by appellants to Barrett, as President of the Adams Express Co. v. City of New York, 232 U. S. 14, 31, 58 L. ed. 483, 490 (1914), where it was stated: "Local police regulations can not go so far as to deny the right to engage in interstate commerce, or to treat it as a local privilege, and prohibit its exercise in the absence of a local license. Crutcher v. Kentucky, 141 U. S. 47, 35 L. ed. 649, 652, Minnesota Rate Case (Simpson v. Shepard), 230 U. S. 352, 401, 57 L. ed. 1511, 1542, 33 Sup. Ct. Rep. 729. As was said by this court in Crutcher v. Kentucky (supra), 'a state law is unconstitutional and void which requires a party to take out a license for carrying on interstate commerce, no matter how specious the pretext may be for imposing it.'" There, as well as in the Crutcher case, the plaintiff was engaged in operating an express company, whose transportation business had been the express subject of regulation by Congress. Such is not the case here.

Other charges imposed by states affecting interstate commerce have been held valid. For example, wharfage fees for the privilege of receiving and landing passengers and freight which comes from other states (Parkersburg & O. River Transp. Co. v. Parkersburg, 107 U. S. 691, 27 L. ed. 584, 2 Sup. Ct. Rep. 732); reasonable tolls to persons using locks in rivers while engaged in interstate commerce: Huse v. Glover, 119 U. S. 543, 30 L. ed. 487, 7 Sup. Ct. Rep. 313. See, also, Lindsay & Phelps Co. v. Mullen et al., 176 U. S. 126, 44 L. ed. 400.

In American Motor Coach System v. Phila. et al., supra, the plaintiff was engaged in operating motor busses for carrying passengers for hire between Phila-

delphia and points in New Jersey and New York. The city of Philadelphia passed an ordinance which required them to obtain a license from the city before operating the busses, and an injunction to restrain the enforcement of this ordinance was refused. The court held that, as applied to such vehicles, the ordinance did not impose a direct and unreasonable burden, but that it was a proper exercise of the police power and essential to the preservation of the public safety and good.

In Kane v. New Jersey, 242 U. S. 160, 167, 61 L. ed. 222, 227 (1916), Kane, a resident of New York, was arrested in New Jersey because he had neither registered his car in that state nor paid a registration fee. A New Jersey statute provided, among other things: "Every resident of this state and every nonresident, whose automobile shall be driven in this state, shall, before using such vehicle on the public highways, register the same, and no motor vehicle shall be driven unless so registered . . . . . ." There, as here, it was contended that the statute violated the Constitution and the laws of the United States regulating interstate commerce. Mr. Justice BRANDEIS held: "The power of a state to regulate the use of motor vehicles on its highways has been recently considered by this court and broadly sustained. It extends to nonresidents as well as to residents. It includes the right to exact reasonable compensation for special facilities afforded as well as reasonable provisions to insure safety. And it is properly exercised in imposing a license fee graduated according to the horse power of the engine." See also Bradley v. P. S. C. of Ohio, 289 U. S. 92, 77 L. ed. 1053; Sproles v. Binford, 286 U. S. 374, 396, 76 L. ed. 1167.

We are, therefore, of the opinion that the Vehicle Code is constitutional.

The second position taken by the appellants is that

they are exempted by the reciprocity provision of the code, section 409 (b) (75 PS §99), which is as follows: "The owner of a foreign vehicle, operated within this Commonwealth for the transportation of persons or property for compensation, either regularly according to schedule, or for a period exceeding thirty (30) days, shall register such vehicles and pay the same fees therefor as are required for like vehicles owned by residents of this Commonwealth." They argue that this bus was not operated regularly but only on one occasion—as an emergency substitute for one that was broken down. This contention is not in conformity with the agreed statement of facts, which specifically state that the bus in question was operated "regularly according to schedule." The Vehicle Code does not make any exception, however, which would permit an isolated use of an unlicensed bus.

We find nothing unfair or unreasonable in imposing the payment of licenses on those engaged in the business of operating buses of this character. It is no more of a hardship than requiring one of the residents of the Commonwealth to have his car licensed, even though it may be used temporarily for substitute purposes. Nor do we think the temporary inconvenience, by reason of delay in case of a breakdown, resulting to passengers who may see fit to use transportation of this character, controlling. Other licensed cars should be substituted in the event of such a contingency. The statute clearly requires that vehicles and drivers must be licensed, and compliance with its terms is imperative.

Judgments are affirmed.