UNITED STATES of America,
Plaintiff,

v.

Alice CHARLES, Defendant.

Crim. No. 1999–051.

District Court, Virgin Islands,
D. St. Croix.

Nov. 11, 1999.

Tracey M. Christopher, Assistant United States Attorney, St. Croix, VI, for plaintiff.

George W. Cannon, St. Croix, VI, for defendant.

## MEMORANDUM

MOORE, District Judge.

On June 14, 1999, the grand jury returned a three-count indictment accusing defendant Alice Charles ["Charles"] of manufacturing and possessing with intent to distribute a controlled substance, to wit, fifty or more marijuana plants, in violation of 21 U.S.C. § 841(a)(1), (b)(1)(C) & (b)(1)(B)(vii) and 19 V.I.C. § 608b. Charles has moved to suppress evidence seized by federal agents and statements she made after her arrest. The Court took evidence at a hearing on September 30, 1999, and "viewed" a room full of growing marijuana plants on October 1, 1999.

## I. FACTS

On May 18, 1999, Detectives Angel E. Diaz, Jr. ["Diaz"] and Christopher Howell ["Howell"], Virgin Islands police officers designated as federal agents with the High Intensity Drug Trafficking Area ["HIDTA"], received a tip from a concerned citizen that the renter at Plot No. 8 Catherine's Rest Estate ["Catherine's Rest"], St. Croix, United States Virgin Islands, only visits the residence for a few hours each day and that the windows are always closed with the air conditioner on even when no one is in the house. The next day

at about 4:45 a.m., Diaz and Howell went onto the property without a search warrant and took a sample "swipe" of the front doorknob of the residence at Catherine's Rest. The sample tested positive for marijuana when analyzed by an ionscan detector.

At about 7:30 on the morning of May 20th, Diaz and Special Agent David Levering ["Levering"] returned to the property, still without a search warrant, and knocked on the front door of the residence. Almost as soon as defendant Charles opened the door, the agents noticed the distinctive smell of fresh marijuana. The agents asked Charles to step out and remain outside of the house. They then asked for her consent to enter the house, but she refused to grant it. Charles then slipped back inside and locked the front door behind her. Moments later, the agents heard a toilet flush. Diaz found the water pump for the house and disconnected it to prevent further flushing. Diaz and Levering began to break down the door with a masonry block, when Charles agreed to open the door. Unfortunately, the door was too damaged to be opened. Diaz then completed the job of breaking in the door, and the officers entered the house. Once inside the officers found marijuana plants and dirt in the toilet, and marijuana plants growing in the bedroom.

Diaz and Levering arrested Charles and took her to the HIDTA office for booking. When asked the routine question of where she lived, the defendant first said she lived at Catherine's Rest, but corrected this later to say that she lived at No. 116 Estate Whim, St. Croix, United States Virgin Islands.

Without using what they saw while inside the residence at Catherine's Rest, the agents obtained a warrant to search the residence and Charles' automobile, based only on information from the concerned citizen, the positive results from the ion-scan of the doorknob swipe, and the smell of fresh marijuana that the agents detected when Charles opened the door. The agents returned to Catherine's Rest with the warrant and seized approximately forty-six marijuana plants from the residence. Their search of her automobile produced documentation that the defendant resided at No. 11E Plessen ["Plessen"] on St. Croix. Based on the same information used to support the Catherine's Rest search warrant, plus evidence obtained from the searches of the defendant's car and Catherine's Rest, the agents obtained a separate warrant to search the house at No. 11E Plessen. There they discovered more marijuana.

Charles has moved this Court to suppress all evidence, both oral and tangible, obtained as a result of her arrest and questioning, and the search and seizure of property from the houses at Catherine's Rest and Plessen. At the suppression hearing the government presented testimony that marijuana has a strong and distinctive odor as a green, growing plant, and not just when it is dried or burned. The defendant countered that growing marijuana has very little or no odor. The next day, the Court conducted a "viewing" of approximately forty-six green, growing marijuana plants in a room in the District Court on St. Croix. The viewing took place on the record and in the presence of and with the consent of the defendant and both counsel. Within a second or two of opening the door to the room containing the plants, the fragrance was noticeable. Within another two or three seconds, the strong and distinctive odor permeated the hallway outside the room. The viewing thus confirmed the government's evidence that green, growing marijuana plants have a very strong and distinctive odor.

## II. DISCUSSION

### A. The Agents Violated the Curtilage of Catherine's Rest

 The Fourth Amendment provides:

The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized.[1]

Included within the Fourth Amendment's protection is the curtilage of a home, which includes "the area around the home to which the activity of home life extends." *See Oliver v. United States,* 466 U.S. 170, 182 n. 12, 104 S.Ct. 1735, 80 L.Ed.2d 214 (1984). What the occupant reasonably expects to be treated as her home determines the boundaries of the curtilage. *See United States v. Dunn,* 480 U.S. 294, 300, 107 S.Ct. 1134, 94 L.Ed.2d 326 (1987).[2] Clearly, the doorknob on the defendant's front door of the Catherine's Rest residence is within the curtilage of the home. The agents' warrantless search of the doorknob for marijuana residue violated Charles' Fourth Amendment rights.[3] Accordingly, the Court will suppress any evidence of the swipe of the doorknob, as well as any fruits of the illegal search, including the ionscan analysis of the swipe.

### B. Seizure of Marijuana and Arrest of the Defendant

The defendant moved to suppress evidence seized at Catherine's Rest and Plessen, arguing that it was seized incident to a wrongful arrest because Diaz and Levering arrested her without a warrant or probable cause to believe she had committed or was committing a felony. Charles further alleged that the officers violated her Fourth Amendment rights when they discovered marijuana plants inside the house at Catherine's Rest, because the officers lacked a search warrant to enter the house, and there were no exigent circumstances to justify the warrantless entry into the house. The government contends that Charles' Fourth Amendment rights were not violated, because the agents seized marijuana and other evidence at Catherine's Rest and Plessen only after they had first obtained search warrants supported by probable cause. It also justified the arrest and entry into the house with a version of the "plain view" doctrine, namely, that the "plain smell" of marijuana wafting from her open door provided the requisite probable cause to arrest her. Further, says the government,

---

1. The Fourth Amendment is made applicable to the Virgin Islands pursuant to the Revised Organic Act of 1954, § 3, 48 U.S.C. § 1561, as amended by Pub.L. No. 90–496, § 11, 82 Stat. 841 (Aug. 23, 1968). The complete Revised Organic Act of 1954 is found at 48 U.S.C. §§ 1541–1645 (1995), *reprinted in* V.I. CODE ANN., Historical Documents, 73–177 (codified as amended) (1995 & Supp.1999) (preceding V.I. CODE ANN. tit. 1).

2. Courts determine the curtilage using four factors: (1) how close the area is to the home, (2) whether any enclosure around the home includes the area, (3) how the area is put to use, and (4) what effort the occupant has made to protect the area from observation. *See Dunn,* 480 U.S. at 301, 107 S.Ct. 1134 ("These factors are useful analytical tools to the degree that [they bear upon] whether the area in question is so intimately tied to the home itself that it should be place under the home's 'umbrella' of Fourth Amendment protection.").

3. The swipe of "residue" from the doorknob did not constitute a seizure. *See Maryland v. Macon,* 472 U.S. 463, 469, 105 S.Ct. 2778, 86 L.Ed.2d 370 (1985) (an action that does not meaningfully interfere with a possessory interest does not amount to a seizure).

Charles' hasty retreat and the subsequent sound of a toilet flushing provided the necessary exigent circumstances based on imminent destruction of evidence to permit the agents to enter without a warrant.

### 1. *Probable Cause*

 Under the Fourth Amendment, probable cause is a requirement precedent to a lawful arrest or other search and seizure. *See Beck v. Ohio,* 379 U.S. 89, 97, 85 S.Ct. 223, 13 L.Ed.2d 142 (1964). To justify entry onto private premises to make an arrest, a warrant issued upon probable cause is ordinarily required, and "searches and seizures inside a home without a warrant are presumptively unreasonable." *See Payton v. New York,* 445 U.S. 573, 576, 586, 100 S.Ct. 1371, 63 L.Ed.2d 639 (1980). "[T]he Fourth Amendment has drawn a firm line at the entrance to the house. Absent exigent circumstances, that threshold may not reasonably be crossed without a warrant." *Id.* at 573, 100 S.Ct. 1371.

 Whether an informant's tip is sufficient to create probable cause depends on the totality of the circumstances. *See Illinois v. Gates,* 462 U.S. 213, 238–39, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983). These circumstances include the nature of the information, opportunity of the officers to witness the matter reported, the veracity and basis of knowledge of the informant, and verification by the police of the matters reported. *Id.* at 235–40, 103 S.Ct. 2317. According to the credible testimony of Agent Diaz at the suppression hearing, the informant told him that she believed that someone was growing marijuana at the house at Catherine's Rest and taking it to school to sell. The tipster had never given information to Diaz before and admitted that her information was partially based on rumors.

 Without more, the tipster's information did not constitute a basis for probable cause. The detectives' own subsequent investigation, however, confirmed the informant's reliability. The detectives knocked on Charles' door on May 20, 1999, and she answered. They clearly possessed the right, as any citizen has, to knock on the door of an ungated residence. Charles's expectation of privacy in the curtilage did not extend to people knocking on the door. Diaz and Levering were thus lawfully present when Charles opened the door and let escape the "plain smell" of fresh marijuana, which verified the tipster's information. *See United States v. Ventresca,* 380 U.S. 102, 111, 85 S.Ct. 741, 13 L.Ed.2d 684 (1965) (hearsay evidence corroborated by scent of mash were sufficient to establish probable cause that illegal distillery existed on premises). At the moment they smelled the illegal substance reported by the informant, the agents had probable cause to believe that a crime was being committed inside the house.[4] Such probable cause would have justified the later issuance of an arrest warrant, had the agents applied for such, and did justify the issuance of two search warrants.[5]

---

4. The Court has not considered the results of the ionscan of the swab sample from Charles' doorknob, since the swipe was taken in derogation of Charles' Fourth Amendment rights.

5. The "plain view" doctrine, extended to "plain smell," *see, e.g., United States v. Lueck,* 678 F.2d 895, 903 (11th Cir.1982) and *United States v. Johnston,* 497 F.2d 397, 398 (9th Cir.1974), may sometimes justify the warrantless seizure of evidence. *See Coolidge v. New Hampshire,* 403 U.S. 443, 465–66, 91 S.Ct. 2022, 29 L.Ed.2d 564 (1971) (law enforcement officers may seize evidence without a warrant if such evidence is in plain view of the officers' lawful vantage point). Further, the doctrine provides that officers need not shield their eyes (or noses) from evidence plainly before them. Here, however, the agents seized evidence only pursuant to

### 2. *Warrantless Arrest of The Defendant Under Exigent Circumstances*

 Law enforcement officials must have an arrest warrant to effect a non-emergency arrest of an individual in her home. *See Payton,* 445 U.S. at 573, 100 S.Ct. 1371. The burden is on the government to demonstrate sufficient exigency to overcome the presumption that a warrantless arrest in the home is unreasonable. *See Welsh v. Wisconsin,* 466 U.S. 740, 750, 104 S.Ct. 2091, 80 L.Ed.2d 732 (1984); *Mincey v. Arizona,* 437 U.S. 385, 98 S.Ct. 2408, 57 L.Ed.2d 290 (1978).

The Supreme Court has emphasized that exceptions to the warrant requirement are "few in number and carefully delineated," *see United States v. United States District Court,* 407 U.S. 297, 318, 92 S.Ct. 2125, 32 L.Ed.2d 752 (1972), and that the police bear the burden when attempting to demonstrate an urgent need that might justify warrantless searches or arrests, *see, e.g., Vale v. Louisiana,* 399 U.S. 30, 34–35, 90 S.Ct. 1969, 26 L.Ed.2d 409 (1970). Indeed, the Court has recognized only a few such emergencies, *see, e.g., United States v. Santana,* 427 U.S. 38, 96 S.Ct. 2406, 49 L.Ed.2d 300 (1976) (hot pursuit of a fleeing felon); *Warden v. Hayden,* 387 U.S. 294, 298–99, 87 S.Ct. 1642, 18 L.Ed.2d 782 (1967) (same); *Schmerber v. California,* 384 U.S. 757, 770–71, 86 S.Ct. 1826, 16 L.Ed.2d 908 (1966) (destruction of evidence); *Michigan v. Tyler,* 436 U.S. 499, 509, 98 S.Ct. 1942, 56 L.Ed.2d 486 (1978) (ongoing fire). The Court has allowed only the "hot pursuit" exception, however, where the arrest is made in the home without a warrant. *See Santana, supra.* Even in *Santana,* the police hotly pursued a fleeing felon from a public place into his house, whereas Charles was already in the privacy of the curtilage of her home when the alleged exigency arose.

 Although the agents did not seize any evidence at Catherine's Rest when they arrested the defendant, they justified their earlier warrantless entry into the home on their fear that Charles would destroy the marijuana plants, which their noses told them were inside. *See Minnesota v. Olson,* 495 U.S. 91, 91–92, 110 S.Ct. 1684, 109 L.Ed.2d 85 (1990) (in destruction-of-evidence context, the relevant concern is the likelihood that evidence is threatened with imminent destruction). A reasonable belief in the imminent destruction of evidence exists when the agents know that evidence is actually being destroyed or are certain that it is about to be destroyed. *See Cupp v. Murphy,* 412 U.S. 291, 296, 93 S.Ct. 2000, 36 L.Ed.2d 900 (1973). "When Government agents [ ] have probable cause to believe contraband is present and, in addition, based on the surrounding circumstances or the information at hand, they reasonably conclude that the evidence will be destroyed or removed before they can secure a search warrant, a warrantless search is justified." *United States v. Rubin,* 474 F.2d 262, 268 (3d Cir.1973). In *Rubin,* the Court enumerated possible emergency circumstances which might seem relevant to courts:

(1) the degree of urgency involved and the amount of time necessary to obtain a warrant; (2) reasonable belief that the contraband is about to be removed; (3) the possibility of danger to police officers guarding the site of the contraband while a search warrant is sought; (4) information indicating the

---

search warrants and not under a "plain view" or "plain smell" warrantless seizure excep-

tion.

possessors of the contraband are aware that the police are on their trail; and (5) the ready destructibility of the contraband and the knowledge that efforts to dispose of narcotics and to escape are characteristic behavior of persons engaged in the narcotics traffic.

*Id.* (citations and internal quotations omitted).

 Only the fourth and fifth justifications favor the detectives' claim that the marijuana plants they had probable cause to believe were inside the house were about to be destroyed. Clearly, when Charles retreated into her house and barricaded the door, she knew that police were on her trail. The detectives knew that persons engaged in drug trafficking try to dispose of their narcotics. The remaining *Rubin* factors, however, convince the Court that the agents had no reasonable basis to believe that the marijuana plants they suspected to be inside the house would be disposed of before they could obtain a search warrant.

Detective Diaz testified that the agents turned off the water supply to the house before they entered the defendant's house, effectively ending the exigency. Diaz also testified that as he was bashing in the door, Charles called to him from the other side that she would let him in. Thus, there was no likelihood of danger to the officers. Nonetheless, when Charles could not open the door because of the damage already inflicted on the it, Diaz "had to finish the job." (Transcript of Detective Diaz, Aug. 30, 1999 ["Diaz Tr."] at 43.) With the water turned off to the house, making it impossible to flush away evidence, and Charles standing on the other side of the door talking to Detective Diaz,

the government has failed to meet its burden of demonstrating exigent circumstances for the warrantless arrest.

Further, Diaz acknowledged detecting the "strong odor of marijuana" from growing marijuana plants and not the smell of burning marijuana. (Diaz Tr. at 35.) Given the strong smell of growing marijuana plants, which corroborated the information from the informant, it was not reasonable for the agents to believe that Charles would be able flush away or otherwise dispose of marijuana plants in the quantities which would justify a forcible breach of Charles' home without a search warrant. The Court therefore cannot find that exigent circumstances justified the agents' warrantless entry into the defendant's home to effect her arrest. Charles' arrest in the house was illegal, and her statement and other evidence obtained as fruits of that arrest will be suppressed. Any evidence seized from her car and residences at Catherine's Rest and Plessen, however, requires separate discussion.

### 3. Search and Seizure Pursuant to Valid Warrants

 Evidence "initially discovered during, or as a consequence of, an unlawful search, but later obtained independently from activities untainted by the initial illegality" falls within the independent source exception to the exclusionary rule. *See Murray v. United States,* 487 U.S. 533, 537, 108 S.Ct. 2529, 101 L.Ed.2d 472 (1988). In *Murray,* marijuana first seen during an illegal search was later seized pursuant to a warrant, the issuance of which was not influenced by the earlier illegal entry.[6]

---

**6.** *See also Segura v. United States,* 468 U.S. 796, 805, 104 S.Ct. 3380, 82 L.Ed.2d 599 (1984). Police entered the premises and arrested the occupants before obtaining a

search warrant. The Court held that the illegality of the entry did not require suppression of evidence discovered during the later execution of the search warrant, because the war-

This Court must "conscientiously review the sufficiency of affidavits on which warrants are issued." *Gates*, 462 U.S. at 239, 103 S.Ct. 2317. The information the agents obtained from an informant, as verified by the agents' own observations of the exterior of the house and their plain smell of marijuana, supplied the probable cause for the warrants issued by the magistrate judge just a few hours later. The affidavit of Special Agent Levering in support of the search warrant for Catherine's Rest and Charles' automobile did not mention or assert as a basis for probable cause the marijuana plants he saw while in the house during the arrest. Although the affidavit included the results of the ionscan, which has been suppressed, there was a sufficient independent basis for probable cause that marijuana cultivation was taking place inside the house without those results. *See Ventresca, supra.* The subsequent search warrant for Plessen was also supported by an affidavit containing information sufficient to establish probable cause independent of, and without mention of, any information obtained from the initial forcible entry into the house at Catherine's Rest. The Court will not suppress the evidence obtained pursuant to the two search warrants.

### III. CONCLUSION

The agents sample swipe of Charles' front doorknob was a warrantless search which violated Charles' Fourth Amendment rights. The Court will suppress any evidence of the swipe of the doorknob and the ionscan analysis of the swipe. The agents' warrantless arrest of Charles in her home also violated her Fourth Amendment rights. The evidence obtained from Catherine's Rest, Plessen, and Charles' car pursuant to search warrants was supported by probable cause independent of

rant affidavit was based entirely on evidence

the aforementioned violations. The Court will suppress any statement made by the defendant incident to her arrest. Any evidence obtained independently by warrants based on probable cause unrelated to her arrest or the ionscan will not be suppressed. An appropriate order follows.

### ORDER

For the reasons set forth in the accompanying memorandum of even date, it is hereby

**ORDERED** that the defendant's motion for suppression of evidence of the sample swipe of her doorknob and subsequent ionscan of that sample, and obtained as a result of her arrest is **GRANTED**, and it is further

**ORDERED** that the balance of the defendant's motion to suppress is **DENIED**, and any evidence seized pursuant to the lawfully executed search warrants will not be suppressed.

obtained before the illegal entry.