

2002 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

3-8-2002

# USA v. Charles

Precedential or Non-Precedential:

Docket 0-4352

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2002

Recommended Citation

"USA v. Charles" (2002). *2002 Decisions.* Paper 158.
http://digitalcommons.law.villanova.edu/thirdcircuit_2002/158

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2002 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT


No. 00-4352


UNITED STATES OF AMERICA

v.

ALICE CHARLES,

Appellant


On Appeal from the District Court
of the Virgin Islands – St. Croix
(D.C. Criminal No. 99-cr-00051)
District Judge:  Hon. Thomas K. Moore


Argued December 6, 2001

BEFORE: BECKER, Chief Judge, NYGAARD and COWEN, Circuit Judges

(Filed    March 8, 2002  )

George W. Cannon, Jr., Esq. (Argued)
Law Offices of George W. Cannon, Jr.
70 & 70-A (115) Queen Street
Frederiksted, St. Croix
USVI, 00840

    Counsel for Appellant

Tracey Christopher, Esq. (Argued)
Office of the United States Attorney
1108 King Street, Suite 201
Christiansted, St. Croix
USVI, 00820

        Counsel for Appellee

                              OPINION


COWEN, Circuit Judge.
     Alice Charles appeals from the judgment of conviction of the District Court of the Virgin Islands finding her guilty of knowingly and intentionally manufacturing marijuana, in violation of 21 U.S.C.    841(a)(1) and (b)(1)(C).  Charles contends that the District Court erred in denying her motion to suppress the evidence of drugs allegedly seized in violation of the Fourth Amendment.  We will affirm the judgment of the District Court.

                                 I.
     On May 4, 1999, Officers Angel Diaz and Christopher Howell, members of the Virgin Islands High Intensity Drug Trafficking Area Task Force, received an anonymous tip from a "concerned citizen" that the renter of No. 8 Catherine's Rest Estates, St. Croix, United States Virgin Islands ("No. 8"), was growing marijuana in her residence and selling it at a local school.  The officers had no prior contact or experience with the informant.  On three occasions over a period of approximately two weeks the officers surveilled No. 8, which was located on land known as Martin Farm, a fenced-in property containing No. 8 and several other rental houses.  The fence surrounding Martin Farm had an opening which allowed car access to a dirt road known as Martin Farmer's Road.  No. 8 was located approximately one quarter of a mile from the entrance of Martin Farm on Martin Farmer's Road.  During the three visits to No. 8, the officers observed that the air conditioning was always running, all of the windows were shut, and no one appeared to be in the house, except on May 20, 1999, when Charles was arrested.
     On May 18, 1999, the same concerned citizen contacted Officer Diaz and stated that the renter at No. 8 came to the residence for only a few hours each day, but that the

air conditioning remained on at all times and that the windows were always shut.

Officers Diaz and Howell went to the house at 4:45 a.m. on May 19, 1999, and again observed that the air conditioning was running and that no one appeared to be at the house. Officer Diaz ran a swab across the outside door latch attached to the screen door that led to the screened-in front porch. An Ionscan was performed on the swab revealing a high presence of marijuana.

The next morning, Officer Diaz and INS Special Agent David Levering (assigned to the same task force as Officer Diaz) returned to No. 8. A blue car was parked outside the house, which had not been present on any previous visit. All of the windows to the house were closed. Officer Diaz opened the unlocked screen door, walked approximately eight or ten feet through the screened-in porch, and knocked on the front door. Charles answered from inside the house, without opening the front door. The officers stated that it was the police. Charles opened the door and stepped onto the porch. The officers observed that the air conditioning was on inside the house, and almost immediately also detected the smell of growing marijuana. The officers asked Charles if any illegal activity was going on inside the house, to which Charles answered in the negative. The officers then asked if they could go into the house. Charles refused and told the officers that they needed a warrant to go inside.

Officer Diaz told Charles that she could not go back inside the house because of his fear that she would destroy evidence. Charles told Officer Diaz that she needed to use the bathroom. Officer Diaz told her to go to a neighbor's house or that he would take her to the police station to use the facilities, but that she could not go into the house. Charles then bolted to inside the house locking the door behind her. Within moments, the officers heard the sound of a flushing toilet. Officer Diaz unplugged the water pump outside the house and started to use a masonry block to knock the front door down. At one point Charles yelled from behind the door for Officer Diaz to stop and she would open the door. But too much damage had been done to the door and Officer Diaz had to break it down. Once inside the house, the officers arrested Charles and surveilled each

room to make sure no one else was inside.  During their surveillance of the house, they observed live marijuana plants in the bedroom and in the toilet bowl.

Officer Diaz provided the affidavit used to obtain the search warrant for No. 8. He included in the affidavit: the informant's tip on May 18, 1999; his observations of No. 8 made on the morning of May 19, 1999, which corroborated the informant's information; the results of the Ionscan; the smell of fresh marijuana upon Charles opening the door on the morning of May 20, 1999.  Also included was the chain of events on May 20, 1999, when Charles ran back into the house and the officers secured the house as well as detained Charles.

A Magistrate Judge granted a search warrant which included No. 8 and the blue car parked outside of the house.  In executing the warrant, forty-six live marijuana plants were seized.  The officers used the information from the search of No. 8 and Charles' car to obtain a second warrant for Charles' other residence, No. 11E Estate Pleasant, St. Croix, Virgin Islands ("No. 11E").  Officers seized drying marijuana from this second house.

## II.

A grand jury returned a three-count indictment.  It charged Charles with the manufacture of a controlled substance, marijuana, in violation of 21 U.S.C.  841(a) & (b)(1)(C), possession with intent to distribute marijuana, in violation of 21 U.S.C. 841(a)(1) & (b)(1)(B)(vii), and operation and maintenance of a manufacturing facility for marijuana, in violation of 19 V.I.C.  608b.  Charles moved to suppress the evidence seized during the searches of the two houses and her car.  Officers Diaz and Levering testified, and Charles presented two witnesses to dispute the officers' testimony regarding the odor of marijuana plants.  Following the hearing on the motion to suppress, the government offered a demonstration in order for the District Court to observe the smell of growing marijuana.  The next day the District Court observed forty-seven live marijuana plants in a holding cell in the basement of the courthouse.  Charles' counsel suggested that No. 8 would be a better location for the demonstration but he did not object to the demonstration which the government put forth.

The District Court issued a memorandum and order suppressing the results of the Ionscan but denied Charles' motion to suppress the evidence that resulted from the execution of the two search warrants for No. 8, Charles' car, and No. 11E. With regard to the results of the Ionscan, the District Court determined that the doorknob fell within the curtilage of the house, and held the swabbing of the doorknob to be an unconstitutional search.

The District Court denied the Motion to Suppress for No. 8 and Charles' car based upon "[t]he information the agents obtained from an informant, as verified by the agents' own observations of the exterior of the house and their plain smell of marijuana." App. at 180. Based upon the demonstration with growing marijuana plants, the District Court found that "[w]ithin a second or two of opening the door to the room containing the plants, the fragrance was noticeable. Within another two or three seconds, the strong and distinctive odor permeated the hallway outside the room. The viewing thus confirmed the government's evidence that green, growing marijuana plants have a very strong and distinctive odor." App. at 170-71. The District Court explained that despite the fact that Diaz's affidavit contained the results of the Ionscan (which the District Court suppressed), there was a "sufficient independent basis for probable cause that marijuana cultivation was taking place inside the house." App. at 180. The District Court also denied the Motion to Suppress the evidence seized at No. 11E. Charles entered a conditional plea of guilty to Count One of the indictment, for the unlawful manufacture of marijuana.

Charles appeals the District Court's finding that Officers Diaz and Levering were lawfully present at No. 8 on May 20, 1999, from which the District Court found probable cause for the first search warrant issued based upon the plain smell doctrine. Charles asserts that but for the Ionscan results obtained on May 19, 1999, the officers would not have returned the following morning to No. 8 nor smelled the marijuana when she opened the door. Charles also asserts that the District Court erred in finding that probable cause existed for the two search warrants independent of the alleged unconstitutional Ionscan.

We agree with the District Court that there is sufficient basis to justify the search warrants, independent of the Ionscan which was suppressed. The officers were lawfully present at No. 8 on May 19th and 20th. We conclude that the results of the Ionscan did not taint the evidence obtained through the knock and talk on May 20, 1999, or the subsequent execution of the search warrants. The investigation by the officers of No. 8 was ongoing and had not been resolved as of May 20, 1999. We are reasonably confident that the officers would have returned to No. 8 on May 20th or thereafter, either with or without the results of the Ionscan. Under a totality of the circumstances analysis, there was probable cause for the issuance of the search warrant on May 20, 1999. The subsequent warrant for No. 11E was therefore also valid. It is unnecessary on the record before us to reach the constitutionality of the Ionscan and we reserve that question for another day.

### III.

We review the District Court's findings of the underlying facts for clear error but exercise plenary review as to conclusions of law. See United States v. Acosta, 965 F.2d 1248, 1250 (3d Cir. 1992); United States v. Inigo, 925 F.2d 641, 656 (3d Cir. 1991). In reviewing the Order of the District Court upholding the Magistrate Judge's probable cause determination, we exercise a deferential review. Illinois v. Gates, 462 U.S. 213, 236, 103 S.Ct. 2317, 2331. We must determine only "that the magistrate judge had a 'substantial basis' for concluding that probable cause existed to uphold the warrant." United States v. Whitner, 219 F.3d 289, 296 (3d Cir. 2000) (citing Gates, 462 U.S. at 238, 103 S.Ct. at 2331).

### IV.

Charles contends that the District Court erred by determining that the officers' presence at No. 8 on May 20 was legal. She asserts that but for the allegedly illegal Ionscan results, the officers would not have knocked on the front door of No. 8 on May 20th, the officers would not have been exposed to the alleged smell of growing marijuana, and there would have been no basis for the Magistrate Judge to make his probable cause determination.

We resolve this issue without addressing the constitutionality of the Ionscan.  The Fourth Amendment protects against "unreasonable searches and seizures." U.S. Const. amend. IV.  But not all encounters with law enforcement officials implicate the Fourth Amendment.  Only when the encounter restrains the person's liberty is the Fourth Amendment triggered.  So long as the encounter on May 20th was consensual and fell short of an investigative stop, the officers were lawfully present at No. 8 on that date and did not need to make a showing of reasonable suspicion or probable cause.  Contrary to Charles' position, the officers needed neither reasonable suspicion nor probable cause to knock on No. 8 on May 20th because the encounter fell short of an investigative stop and was consensual.  See United States v. Kim, 27 F.3d 947, 950 (3d Cir. 1994) (citing Florida v. Bostick, 501 U.S. 429, 434, 111 S.Ct. 2382, 2386 (1991)); see also United States v. Jones, 239 F.3d 716, 720 (5th Cir. 2001) ("knock and talk" is "a reasonable investigative tool"); United States v. Hardeman, 36 F.Supp.2d 770, 777 (E.D. Mich. 1999) (noting that the "knock and talk" is "generally upheld as a legitimate method of investigation, designed to obtain a suspect's consent to search"); Davis v. United States, 327 F.2d 301, 303 (9th Cir. 1964) ("Absent express orders from the person in possession against any possible trespass, there is no rule of private or public conduct which makes it illegal per se, or a condemned invasion of the person's right of privacy, for anyone openly and peaceably, at high noon, to walk up the steps and knock on the front door of any man's 'castle' with the honest intent of asking questions of the occupant thereof whether the questioner be a pollster, a salesman, or an officer of the law.").

In United States v. Kim, we held that an encounter between an officer and an occupant of a roomette on a passenger train was consensual where the "totality of the circumstances" demonstrated that the exchange between the officer and defendant was voluntary and cooperative.  Kim, 27 F.3d at 954.  We explained that the location contributed very little to the argument that a reasonable person would not have felt free to terminate the encounter because a person "can reject an invitation to talk in a private,

as well as a public space." Id. at 952 (quoting Bostick, 501 U.S. at 437, 111 S.Ct. at 2387). The "high expectation of privacy, alone, does not destroy the otherwise consensual nature of the encounter." Kim, 27 F.3d at 953. We also explained that asking potentially incriminating questions is permissible and does not make the encounter coercive the standard is whether an innocent reasonable person would feel compelled to cooperate. Id. (citing Bostick, 501 U.S. at 438, 111 S.Ct. at 2388).

Because the law is clear that the officers did not need reasonable suspicion or probable cause on May 20th to knock at No. 8, the issue is whether the encounter became coercive in the few seconds that passed from the moment Charles opened the door until the officers smelled marijuana. The standard by which we determine whether the encounter between Charles and the police on May 20th was consensual depends on where the encounter took place. See Kim, 27 F.3d at 951. A distinction is made between an encounter in a public place, such as on a public street or in an airport terminal, where a person is free to simply walk away from inquiries, and Charles' situation where she was at her own home when the officers knocked on her door. See, e.g., Bostick, 501 U.S. at 430-34, 111 S.Ct. at 2384-86 (Bostick was confined on a bus and was not free to leave when officers approached him). Because the encounter occurred at Charles' home, the test is "whether a reasonable person would feel free 'to disregard the police and go about his business,' id. at 434, 111 S.Ct. at 2386, or ultimately 'whether a reasonable person would feel free to decline the officers' requests or otherwise terminate the encounter,' id. at 436, 111 S.Ct. 2387, 'taking into account all of the circumstances surrounding the encounter.'" Kim, 27 F.3d at 951. There is no evidence that the encounter between Charles and the two officers rose to a coercive exchange.

The fact that Charles did not consent to a search of her house shows that she did not feel coerced or pressured into allowing a search. In addition, the exchange between the officers and Charles was short, and there is no evidence of repeated questioning or badgering behavior by the officers. The officers asked approximately 3 questions before they became aware of the scent of the marijuana.

The District Court, in affirming the Magistrate Judge's probable cause determination, correctly considered the odor of fresh growing marijuana in its probable cause determination.  We will not disturb the District Court's factual findings that the officers detected the scent of the marijuana plants from where they stood on the porch during their exchange with Charles.  Where there are two permissible views of the evidence, the factfinder's choice between them cannot be clearly erroneous.

While Charles recognizes that the officers did eventually obtain search warrants, she still asserts that the evidence discovered upon execution of those warrants to search her residences and car is inadmissible as "fruits of the poisonous tree," as stemming from the allegedly unconstitutional Ionscan.

Under a totality of the circumstances analysis, there was probable cause for the search warrant on May 20, 1999, given the informant's information, the officers' surveillance of No. 8, and the plain smell of marijuana observed during the knock and talk on May 20, 1999.  The results of the Ionscan did not taint the evidence obtained during the knock and talk, as we are reasonably confident that the officers would have returned on May 20, 1999, or thereafter, despite the results of the Ionscan given that their investigation was ongoing.

For the foregoing reason, the District Court's judgment of November 11, 1999 will be affirmed.

TO THE CLERK:

Please file the foregoing opinion.

/s/Robert E. Cowen

United States Circuit Judge