2006 UT App 324

**STATE of Utah, Plaintiff and Appellee,**

v.

**Ryan Brett ROBBINS, Defendant and Appellant.**

**No. 20050156–CA.**

Court of Appeals of Utah.

Aug. 3, 2006.

**590**

John Pace, Salt Lake Legal Defender Association, Salt Lake City, for Appellant.

Mark L. Shurtleff, Attorney General, and Jeffrey S. Gray, Assistant Attorney General, Salt Lake City, for Appellee.

Before Judges BILLINGS, ORME, and THORNE.

## OPINION

ORME, Judge:

¶ 1 Defendant Ryan Brett Robbins appeals his conviction of aggravated sexual abuse of a child, a first degree felony. *See* Utah Code Ann. § 76–5–404.1 (2003). Robbins argues the trial court erred when it refused to reassess witness testimony for credibility and when it denied his motion to arrest judgment premised on that ground. We affirm.

## BACKGROUND [1]

¶ 2 In the fall of 2000, seven-year-old J.M. (Child) was living with her mother (Mother) and Robbins, her stepfather. One evening while she was in their bedroom lying on the bed and watching television, Robbins came into the bedroom and joined Child in the bed. He laid down directly behind her in the bed, reached over her with his hand, and touched her vaginal area. Child slapped Robbins's hand away, at which point he removed his hand, arose from the bed, and left the room without comment. Child did not report the incident to anyone at the time.

¶ 3 In February and March of 2001, in the midst of a bitter custody dispute between Child's biological father (Father) and Mother, Father filed complaints with the Division of Child and Family Services (DCFS) alleging that Robbins was physically abusing Child. But after various interviews with those individuals involved, and after Child denied that there was any physical abuse, DCFS closed each investigation because there was no evidence supporting the allegations. DCFS did, however, as a result of the second set of interviews and the obvious tension between her biological parents, recommend that Child enter counseling, which she did.

¶ 4 Reports of this incident of sexual abuse did not surface until December 2003, more than three years after the incident, when Child disclosed the information during a discussion with her psychiatrist. Following Child's report, DCFS began a third investigation. This time Child told investigators that in addition to the instance of sexual abuse, and contrary to her statements in the previous interviews, Robbins had regularly physically abused her over a period of sever-

---

1. "On appeal from a jury verdict, we view the evidence and all reasonable inferences in a light most favorable to that verdict and recite the facts accordingly." *State v. Gordon,* 913 P.2d 350, 351 (Utah 1996).

al years. When questioned as to her change of story, she explained that she had lied in previous interviews because she thought someone was hiding in the closet and listening to her responses.

¶ 5 During the preliminary hearing and at trial, defense counsel questioned Child regarding the inconsistencies in her accounts. Defense counsel also asked questions highlighting Child's unlikely explanations for the inconsistencies. For example, defense counsel questioned Child after Child explained one inconsistent response by stating that she must have misunderstood during an earlier interview because she is hard of hearing. Defense counsel further highlighted the unlikely nature of some of Child's allegations— e.g., Robbins regularly inflicting physical abuse on Child, frequently leaving bruises, yet no one ever seeing those bruises—and sought to otherwise attack Child's credibility by emphasizing the several inconsistencies in Child's testimony.

¶ 6 Notwithstanding defense counsel's questioning and arguments regarding Child's credibility, the jury convicted Robbins on one count of aggravated sexual abuse of a child. Robbins then timely submitted a Motion to Arrest Judgment, arguing that Child's testimony was "so inconclusive or inherently improbable that it could not support a finding of guilt beyond a reasonable doubt." *State v. Workman*, 852 P.2d 981, 984 (Utah 1993). The trial court denied the motion, and Robbins now appeals that decision.

## ISSUES AND STANDARDS OF REVIEW

¶ 7 Robbins challenges the sufficiency of the evidence to support the mens rea element of the charged crime. "We [only] reverse the jury's verdict in a criminal case when we conclude as a matter of law that the evidence was insufficient to warrant conviction." *State v. Smith*, 927 P.2d 649, 651 (Utah Ct.App.1996), *cert. denied*, 937 P.2d 136 (Utah 1997).

¶ 8 In a closely related argument, Robbins also contends that the trial court erred in denying his motion to arrest judgment because it refused to reassess Child's credibility. He argues that this is a case in which such reassessment is permissible because it fits the narrow exception for inherently improbable testimony discussed in *State v. Workman*, 852 P.2d 981, 984 (Utah 1993). Whether the circumstances here do indeed fit the *Workman* exception is a question of law that we review for correctness.[2]

## ANALYSIS

### I. Sufficiency of the Evidence

■ ¶ 9 When reviewing a challenge to the sufficiency of the evidence, "we determine only whether sufficient competent evidence was admitted to satisfy each element of the charge." *State v. Honie*, 2002 UT 4, ¶ 44, 57 P.3d 977, *cert. denied*, 537 U.S. 863, 123 S.Ct. 257, 154 L.Ed.2d 105 (2002). Robbins argues that there was insufficient evidence from which the jury could find, beyond a reasonable doubt, the requisite mens rea, i.e., that Robbins inappropriately touched Child "with intent to cause substantial emotional or bodily pain to any person or with the intent to arouse or gratify the sexual desire of any person." Utah Code Ann. § 76–5–404.1(2) (2003).

2. Robbins argues that the trial court's refusal to reassess Child's testimony was the result of its mistaken belief that it did not have authority to reject evidence that was inconclusive or inherently improbable. The court's comments during the hearing were not crystal clear as to whether Robbins's view is correct or whether, instead, the court recognized that it *did* have such authority under *Workman*, yet determined that the instant case did not fit within the narrow *Workman* exception. The court's written order, however, does appear to be consistent with the latter view: "The Court further determined that it could not say that [Child]'s testimony was inconclusive or inherently improbable to the extent that reasonable minds (the jurors) must have had to entertain a reasonable doubt."

But our uncertainty concerning the court's view does not affect our analysis. In either case we review to determine whether the circumstances here allow reassessment of witness testimony as a matter of law. The trial court is in no better position than we are to make this determination, and we therefore give its conclusion no particular deference. Cf. *West Valley City v. Patten*, 1999 UT App 149, ¶ 7, 981 P.2d 420 (reviewing a trial court's decision under a correction of error rather than an abuse of discretion standard where the trial court "was in no better position than this court to make the determination).

¶ 10 In our consideration of this issue, "we review the evidence and all reasonable inferences drawn therefrom in a light most favorable to the verdict." *Honie*, 2002 UT 4 at ¶ 44, 57 P.3d 977. And "[w]e do not re-evaluate the credibility of witnesses or second-guess the jury's conclusion." *Id.* "We will reverse only if the evidence is so inconclusive or inherently improbable that reasonable minds *must* have entertained a reasonable doubt that the defendant committed the crime." *Smith*, 927 P.2d at 651 (emphasis added) (internal quotations and citations omitted). Thus, if reasonable jurors *could* have reasonably believed, based on the evidence, that the mens rea element was met, the verdict must stand.

¶ 11 In the instant case, there is sufficient evidence to support the requisite mens rea of the crime charged. Child testified that Robbins entered the bedroom in which she was watching television, laid down behind her on the bed, reached his hand around her, and touched her vaginal area. We cannot say it was unreasonable for the jury to have considered Child's testimony and to have determined that Robbins touched Child with one variant of the intent required for sexual abuse of a child, i.e., to "gratify [his] sexual desire." Utah Code Ann. § 76-5-404.1(2).

## II. Inherently Improbable Testimony

¶ 12 Although we conclude that Child's testimony and the inferences to be drawn therefrom adequately support the mens rea element, Robbins argues that her testimony should not be considered because it was inherently improbable. Robbins argues that under *State v. Workman*, 852 P.2d 981 (Utah 1993), the court was authorized to reevaluate Child's testimony and credibility, and erred by not doing so. *Workman* states:

> Ordinarily, a reviewing court may not reassess credibility or reweigh the evidence, but must resolve conflicts in the evidence in favor of the jury verdict. In some unusual circumstances, however, a reviewing court may reassess witness credibility. For example, "testimony which is inherently improbable may be disregarded, ... but to warrant such action there must exist either a physical impossibility of the evi-

> dence being true, or its falsity must be apparent, without any resort to inferences or deductions."

*Id.* at 984 (omission in original) (citations omitted).

¶ 13 To determine whether Child's testimony was inherently improbable under *Workman*, we first focus our discussion on the word "inherently" and conclude that the term has a much narrower meaning than Robbins would acknowledge. "Inherent" means "involved in the constitution or essential character of something." *Webster's Third New International Dictionary* 1163 (Philip Babcock Grove ed., 1993). Thus, by definition, inherently improbable testimony is testimony that by its very nature—or on its face—could not be true. *See, e.g., State v. Boyd*, 84 N.M. 290, 502 P.2d 315, 317 (App.) ("The rule is that testimony is not inherently improbable unless what is claimed to have occurred could not in fact have occurred."), *cert. denied*, 84 N.M. 271, 502 P.2d 296 (1972), *cert. denied*, 411 U.S. 937, 93 S.Ct. 1916, 36 L.Ed.2d 398 (1973).

¶ 14 *Workman* explains that one type of inherently improbable testimony is testimony that manifests "a physical impossibility of the evidence being true." 852 P.2d at 984. For example, evidence showing that Robbins lost both of his arms in an industrial accident before the alleged sexual abuse occurred would be sufficient to establish that Child's testimony was inherently improbable, because it would have been physically impossible for Robbins to abuse her in the way she claimed. Robbins does not contend this kind of inherently improbable testimony characterizes Child's testimony in the case before us.

¶ 15 A second category of inherently improbable testimony identified in *Workman*—and the category Robbins believes is applicable in his case—is testimony that is obviously false. *See id.* *Workman* makes clear that in only a few extreme and very narrowly defined situations may a court reassess and reject a witness's testimony as obviously false. To qualify, the testimony's falsity "must be apparent, without any resort to inferences or deductions." *Id.* For instance,

in *Quock Ting v. United States,* 140 U.S. 417, 11 S.Ct. 851, 35 L.Ed. 501 (1891), the petitioner testified that he was born in San Francisco and lived there for the first ten years of his life. *See id.* at 418, 11 S.Ct. 851. He claimed he then traveled to China with his mother and remained there for the next six years. *See id.* At the end of those six years he attempted to enter the United States but was denied admittance, which denial he protested based on his alleged status as a United States citizen. *See id.* at 417–18, 11 S.Ct. 851. Although his testimony was uncontradicted regarding his place of birth, the Court found this testimony inherently improbable because the petitioner could not speak any English, did not even know any English words, and could not remember virtually any other details from those ten years during which he claimed to have been in the United States. *See id.* at 419–20, 11 S.Ct. 851. Because the petitioner's testimony was itself "contradicted by the facts he state[d]," which "discredit[ed] his whole story," *id.* at 420–21, 11 S.Ct. 851, the testimony regarding his birthplace was false on its face.

██ ¶ 16 Accordingly, for testimony to qualify as inherently improbable, "[i]t is not sufficient that the testimony may disclose circumstances which are unusual." *People v. Collier,* 111 Cal.App. 215, 295 P. 898, 902 (1931). Nor does mere inconsistency or lack of corroboration render testimony inherently improbable. *See State v. Dunn,* 850 P.2d 1201, 1213 (Utah 1993) (rejecting argument that witnesses' testimony was inherently improbable notwithstanding that one witness's testimony was "highly inconsistent" and that he "admitted to being diagnosed as a pathological liar"); *State v. Lovato,* 702 P.2d 101, 107–08 (Utah 1985) (stating testimony of physical violence not inherently improbable even though there was little bruising to corroborate the testimony and even though victim did not attempt escape). Rather, such circumstances, while clearly supporting *inferences* of improbability or falsity, merely reflect on the general credibility of the witness. Credibility determinations are the exclusive prerogative of the jury, and the court may not substitute its own determination simply because it would have reached a different result. *See Workman,* 852 P.2d at 984 (observing that "[o]rdinarily ... court[s] may not reassess credibility ..., but must resolve conflicts in the evidence in favor of the jury verdict"); *People v. Mayberry,* 15 Cal.3d 143, 125 Cal.Rptr. 745, 542 P.2d 1337, 1342 (1975) ("Conflicts and even testimony which is subject to justifiable suspicion do not justify the reversal of a judgment, for it is the exclusive province of the trial judge or jury to determine the credibility of a witness and the truth or falsity of the facts upon which a determination depends.") (internal quotations and citation omitted).

██ ¶ 17 Consequently, we categorically reject the notion that a party may establish inherent improbability from generalized concerns about a witness's credibility. Testimony is not inherently improbable under *Workman* simply because it seems unlikely or appears to be false in light of all the circumstances; rather, it must be *inherently* improbable, i.e., improbable by its very nature. We think that if the Utah Supreme Court intended otherwise, it would have used terminology different than "inherently improbable" to more accurately express circumstances in which a witness could be found incredible as a matter of law.

██ ¶ 18 It follows that for a court to reassess and reject testimony under *Workman,* the inherently improbable testimony must also go to the very core of the offense. Inherent improbability of a witness's testimony regarding the key elements of an offense cannot be inferred from credibility problems that arise from testimony that relates only tangentially to the elements of the offense. For even if the court were to reject such peripheral testimony on the ground it is inherently improbable, sufficient testimony would remain to support each element of the offense, and the jury's determination would still stand.

██ ¶ 19 In the instant case, although the bits of testimony to which Robbins points are suspect, they do not go to the core of the offense. For whether Child is hard of hearing, whether she really believed that someone was hiding in the closet during an interview, and whether it is possible that she

could be physically abused in the alleged manner without any adult noticing, are far removed from the essence of the offense—that Child was sexually abused by Robbins. And there is nothing inherently improbable about Child's testimony regarding the core elements of the offense for which Robbins was convicted, i.e., that he deliberately touched her vaginal area with the requisite intent. Her account is certainly not physically impossible, nor can we say it is obviously false without resorting to inferences and deductions. *See Workman*, 852 P.2d at 984. Thus, although Child's testimony is far from seamless and her credibility is less than certain, we cannot say her testimony regarding the sexual abuse is inherently improbable. Accordingly, the trial court properly declined to reassess Child's credibility and properly denied Robbins's motion to arrest judgment.

## CONCLUSION

¶ 20 Because the situation here does not meet the narrow *Workman* exception, the trial court could not independently reassess witness credibility. Child's testimony therefore stands, and her testimony is sufficient to support the jury's verdict.

¶ 21 Affirmed.

¶ 22 WE CONCUR: JUDITH M. BILLINGS and WILLIAM A. THORNE JR., Judges.