2007 UT App 34

**STATE of Utah, Plaintiff and Appellee,**

v.

**Lance NELSON, Defendant
and Appellant.**

No. 20050743–CA.

Court of Appeals of Utah.

Feb. 8, 2007.

Randall W. Richards, Richards Caine & Allen, Ogden, for Appellant.

Mark L. Shurtleff, atty. gen., and Joanne C. Slotnik, asst. atty. gen., Salt Lake City, for Appellee.

Before BENCH, P.J., BILLINGS and DAVIS, JJ.

## OPINION

DAVIS, Judge:

¶1 Defendant Lance Nelson appeals his convictions of possession of an imitation controlled substance, a class A misdemeanor, *see* Utah Code Ann. § 58–37b–4 (2002); and possession of drug paraphernalia, a class B misdemeanor, *see id.* § 58–37a–5(1) (2002). We affirm.

## BACKGROUND

¶2 In December 2003, Detective Olsen of the North Ogden Police Department applied for a warrant to search Defendant's apartment. Detective Olsen's affidavit described his training and experience as a police officer responsible for investigating the use and sales of narcotics, and set forth numerous facts alleging probable cause. According to the affidavit, Detective Olsen first became suspicious of Defendant after conducting a traffic stop of a vehicle leaving Defendant's apartment, during which the vehicle's occupants, who were found possessing methamphetamine, stated that Defendant sells methamphetamine from his apartment.

¶3 Detective Olsen's affidavit also described the observations he made while surveilling Defendant's apartment. Over three days, Detective Olsen witnessed seven vehicles visit Defendant's apartment. During each visit the vehicle's driver entered through Defendant's basement door and left approximately fifteen minutes later. Detective Olsen stated that his training and experience led him to believe that such behavior was consistent with drug trafficking. Further, Detective Olsen obtained the license plate numbers of Defendant's visitors and performed a record check, which revealed that several of the vehicles' registered owners had criminal histories of possessing and selling narcotics and possessing drug paraphernalia. On one afternoon, Detective Olsen recognized one of Defendant's visitors and followed the individual to a carwash where the individual told Detective Olsen that he or she saw Defendant pull a plastic bag containing "about 1/4 of a ounce of crystalized substance" out of his pants pocket.

¶4 Detective Olsen's affidavit also stated that he and another officer approached Defendant's apartment one evening and rubbed a sterile swab on the "outer screen door" and door handle of Defendant's apartment. Detective Olsen then gave the swab to a Drug Enforcement Administration agent, who tested it for microscopic particles of controlled substances using a device called the Ionscan 400B. The Ionscan results revealed "the presence of cocaine."

¶ 5 Based on the foregoing, a judge issued a search warrant. The subsequent search of Defendant's apartment revealed various forms of drug paraphernalia[1] and a plastic bag containing a white crystalline substance, which police officers testified closely resembled methamphetamine. Defendant told the police that the substance was pesticide, which he had taken out of the shed in his backyard and placed in the plastic bag. Defendant explained that he placed the pesticide in the bag because his narcotics had been stolen in the past, and he intended for his next thief to steal the pesticide. Defendant also told the officers that he no longer used or sold drugs. The officers arrested Defendant. He was charged with possession of a controlled substance, see Utah Code Ann. § 58–37–8(2)(a)(i) (Supp.2006); possession of an imitation controlled substance, see id. § 58–37b–4; and possession of drug paraphernalia, see id. § 58–37a–5(1). The trial court dismissed the possession of a controlled substance charge after the preliminary hearing.

¶ 6 Defendant moved to suppress the evidence obtained from the search of his apartment, as well as his statements to police during the search. The trial court denied the motion, and the case went to trial, during which a police officer testified that "the appearance of the substance inside the bag [was] very consistent with methamphetamine or crystal meth, and the manner in which [it was] packaged [was] also very consistent with the packaging of methamphetamine or narcotics." The instructions to the jury defined the elements of Defendant's alleged crimes and included a general instruction on the requisite intent element. A jury convicted Defendant of both charges, and this appeal followed.

## ISSUES AND STANDARDS OF REVIEW

¶ 7 Defendant claims that the evidence presented at trial was insufficient to support his convictions. We " 'reverse the jury's verdict in a criminal case [only] when we conclude as a matter of law that the evidence was insufficient to warrant conviction.' "

State v. Robbins, 2006 UT App 324, ¶ 7, 142 P.3d 589 (quoting State v. Smith, 927 P.2d 649, 651 (Utah Ct.App.1996)), cert. granted, No. 20060885–SC, 150 P.3d 544 (Utah Dec. 17, 2006). Defendant also argues that the trial court erred by failing to suppress the evidence obtained during the search of his apartment because, according to Defendant, the warrantless swabbing of his door violated his Fourth Amendment rights, see U.S. Const. amend. IV, and invalidated the search warrant. "[W]e apply correctness review to Fourth Amendment determinations." State v. Peterson, 2005 UT 17, ¶ 8, 110 P.3d 699 (citing State v. Brake, 2004 UT 95, ¶ 15, 103 P.3d 699).

## ANALYSIS

¶ 8 Defendant first challenges his convictions on the grounds of insufficiency of the evidence. In considering Defendant's claim, "[w]e will reverse only if the evidence is so inconclusive or inherently improbable that reasonable minds must have entertained a reasonable doubt that the defendant committed the crime." Robbins, 2006 UT App 324 at ¶ 10, 142 P.3d 589 (quoting Smith, 927 P.2d at 651). In other words, "if reasonable jurors could have reasonably believed" that the elements of Defendant's crimes were met, "the verdict must stand." Id.

¶ 9 Respecting the conviction of possession of an imitation controlled substance, Defendant alleges that the State failed to prove that he manufactured, distributed, or possessed with the intent to distribute an imitation controlled substance. See Utah Code Ann. § 58–37b–4 ("It is unlawful for any person to manufacture, distribute, or possess with intent to distribute, an imitation controlled substance."). Defendant argues that Utah Code section 58–37b–4 requires the State to prove the element of "intent to distribute" for each activity proscribed by the statute, to wit: manufacture, distribute, and possess. Id. We disagree.

¶ 10 Defendant's argument requires us to interpret Utah Code section 58–37b–4.

---

1. Subsequent tests revealed that none of the tested drug paraphernalia contained traces of controlled substances. However, a glass pipe found at Defendant's apartment was not tested for controlled substances.

"The primary rule of statutory interpretation is to give effect to the intent of the legislature in light of the purpose the statute was meant to achieve. To discover that intent, we look first to the plain language of the statute." *State v. Bluff,* 2002 UT 66, ¶ 34, 52 P.3d 1210 (quotations and citation omitted). Furthermore, when "construing a statute, we assume that each term in the statute was used advisedly; thus the statutory words are read literally, unless such a reading is unreasonably confused or inoperable." *Id.* (quotations and citation omitted).

■ ¶ 11 Our reading of the plain language of section 58–37b–4 reveals that the prosecution need only prove "intent to distribute" under the "possess" element of the statute. Utah Code Ann. § 58–37b–4. The proscribed activities are offset by commas, and only the possession element includes the "intent to distribute" phrase. *Id.* Furthermore, as the State points out, Defendant's interpretation of the statute would result in the redundant and nonsensical crime of distribution of an imitation controlled substance with intent to distribute. *See Bluff,* 2002 UT 66 at ¶ 35, 52 P.3d 1210 (rejecting an interpretation of a statute that "would render portions of the statute redundant, superfluous, and inoperable"). We therefore hold that Utah Code section 58–37b–4 requires the State to prove that an offender intended to distribute an imitation controlled substance only under the possession element of the statute. The distribution and manufacture elements require no such showing.

■ ¶ 12 Turning to the evidence against Defendant, " 'we review the evidence and all reasonable inferences drawn therefrom in a light most favorable to the verdict.' " *State v. Robbins,* 2006 UT App 324, ¶ 10, 142 P.3d 589 (quoting *State v. Honie,* 2002 UT 4, ¶ 44, 57 P.3d 977), *cert. granted,* No. 20060885–SC, 150 P.3d 544 (Utah Dec. 17, 2006). The State argues that the evidence supports Defendant's conviction of possession of an imitation controlled substance under the manufacture element of section 58–37b–4. *See* Utah Code Ann. § 58–37b–4. We agree. The jury was instructed that "[a] person engages in conduct intentionally, or with intent or willfully with respect to the nature of the person's conduct or to a result of the person's conduct, when it is the person's conscious objective or desire to engage in the conduct or cause the result," and that "[m]anufacture means the production, preparation, compounding, processing, encapsulating, tableting, packaging or repackaging, labeling or relabeling, of an imitation controlled substance." (emphasis omitted). *See also id.* § 58–37b–2(4) (2002) (defining the term "manufacture" as used in the Imitation Controlled Substances Act). During the search of his apartment, Defendant told police that the plastic bag contained pesticide, which he had taken out of the shed from the backyard of his residence. Defendant explained that he placed the pesticide in a bag because his narcotics had been stolen in the past, and he intended for his next thief to instead steal the pesticide. Police officers testified that the pesticide resembled methamphetamine and that a small plastic bag was the typical method of packaging methamphetamine. On these facts, a reasonable jury could have found the evidence sufficient to support Defendant's conviction. *See Robbins,* 2006 UT App 324 at ¶ 10, 142 P.3d 589. The act of removing the pesticide from the shed and packaging or repackaging it in the plastic bag falls squarely within the act of manufacturing an imitation controlled substance. *See* Utah Code Ann. § 58–37b–2(4). Defendant's conviction of possessing an imitation controlled substance is affirmed.

■ ¶ 13 Respecting the drug paraphernalia conviction, Defendant alleges that because none of the analyzed paraphernalia tested positive for controlled substances, and because he told the police that he no longer used or sold drugs, his conviction cannot stand. However, Defendant argues in his appellate brief that "[a]t best, the evidence supports only the proposition that [he] possessed the alleged paraphernalia for use in a drug habit." (quotations and citation omitted). Utah Code section 58–37a–5(1) proscribes the use, or possession with intent to use, of drug paraphernalia. *See id.* § 58–37a–5(1). Possession of items for "use in a drug habit" is undoubtedly sufficient to support the jury's verdict. Thus, Defendant's

conviction for possession of drug paraphernalia is affirmed.

¶ 14 Defendant's second argument on appeal is that the swabbing of the doorknob of his apartment violated the Fourth Amendment of the United States Constitution, thereby invalidating the search warrant and requiring that the physical evidence obtained from, and his statements during, the search be suppressed. The State argues that no such Fourth Amendment violation occurred. Alternatively, the State claims that even if the swabbing did violate Defendant's rights, the remaining evidence in Detective Olsen's affidavit provided enough probable cause for the issuance of a search warrant.

¶ 15 Because we determine that Detective Olsen's affidavit contains sufficient evidence to support probable cause, we decline to analyze the constitutionality of the swabbing of Defendant's doorknob. " 'It is a fundamental rule that this court should avoid addressing constitutional issues unless required to do so.' " *State v. Collard,* 810 P.2d 884, 887 n. 4 (Utah Ct.App.1991) (quoting *State v. Anderson,* 701 P.2d 1099, 1103 (Utah 1985)). Instead, we affirm on the grounds that even without the swabbing results, the search warrant was valid.[2]

¶ 16 A court may issue a search warrant only if it determines that there is probable cause supported by an oath or affirmation. *See* U.S. Const. amend. IV; Utah Const. art. I, § 14. To determine if probable cause exists, we apply a " ' "totality-of-the-circumstances" ' " test. *State v. Saddler,* 2004 UT 105, ¶ 11, 104 P.3d 1265 (quoting *State v. Hansen,* 732 P.2d 127, 130 (Utah 1987) (quoting *Illinois v. Gates,* 462 U.S. 213, 233–34, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983))). Determining probable cause is a "practical, common-sense decision of whether, given all the circumstances, there is a fair probability that the contraband will be found in the place described." *Id.* (quotations and

citation omitted). We must "simply decide if the [judge] had a substantial basis for concluding that there were enough facts within the affidavit to find that probable cause existed." *State v. Vigh,* 871 P.2d 1030, 1033 (Utah Ct.App.1994) (quotations and citation omitted). We "consider the affidavit in its entirety" when reviewing the probable cause determination. *Id.* (quotations and citation omitted). Finally, we may uphold a search warrant even when the affidavit establishing probable cause contained illegally obtained or improper information if we determine that absent the improper information "the affidavit contained sufficient facts to support the [judge's] determination of probable cause." *State v. Jackson,* 937 P.2d 545, 548 (Utah Ct.App.1997); *see also State v. Ranquist,* 2005 UT App 482, ¶ 7, 128 P.3d 1201; *Vigh,* 871 P.2d at 1033.

¶ 17 Here, even without the results of the swabbing and Ionscan test, Detective Olsen's affidavit contained evidence demonstrating probable cause to search Defendant's apartment. First, the affidavit noted that Detective Olsen conducted a traffic stop of a vehicle leaving Defendant's apartment during which both of the vehicle's occupants stated that Defendant sells methamphetamine from his apartment. Second, the affidavit described three days of surveillance of Defendant's apartment, during which a total of seven vehicles visited Defendant for approximately fifteen minutes each. Third, the affidavit described Detective Olsen's training and experience in narcotics cases, which led him to believe that the short and frequent visits to Defendant's apartment were consistent with drug trafficking. Fourth, Detective Olsen's affidavit explained that he ran the license plates of the vehicles that visited Defendant, which revealed that several of the vehicles' owners had criminal histories of "possessing and selling narcotics and possessing narcotic paraphernalia." Finally, the

---

2. We are aware that in *United States v. Charles,* 290 F.Supp.2d 610 (D.Vi.1999), *aff'd,* 29 Fed. Appx. 892 (3d Cir.2002), the United States District Court for the District of the Virgin Islands stated that the swabbing of the defendant's doorknob for marijuana residue was an unconstitutional "warrantless search" because "the doorknob on the defendant's front door ... is within

the curtilage of the home." *Id.* at 614. However, as the State points out, there are factual and logical distinctions between the swabbing of Defendant's doorknob and the cases cited by Defendant discussing the curtilage of the home, such as *Kyllo v. United States,* 533 U.S. 27, 121 S.Ct. 2038, 150 L.Ed.2d 94 (2001).

affidavit stated that Detective Olsen recognized one of Defendant's visitors and followed that individual to a nearby carwash to ask him or her questions. The individual told Detective Olsen that Defendant had removed "about 1/4 of a ounce of crystalized substance from his pants pocket and showed it to [the individual]." Under the totality of the circumstances, these facts established probable cause because there was "a fair probability that the contraband [would] be found in the place described." *Saddler,* 2004 UT 105 at ¶ 11, 104 P.3d 1265. Therefore, even without the Ionscan results of the swabbing of Defendant's doorknob, Detective Olsen's affidavit "contained sufficient facts to support the [judge's] determination of probable cause." *Jackson,* 937 P.2d at 548. Because the search warrant was properly based upon probable cause, Defendant's claim that the trial court erred by failing to suppress the evidence obtained during the search of his apartment necessarily fails.

## CONCLUSION

¶ 18 The evidence presented at trial was sufficient to support Defendant's convictions for the manufacturing, distributing, or possessing with intent to distribute, of an imitation controlled substance, and for possession of drug paraphernalia. The search warrant was based upon probable cause so the trial court did not err by refusing to suppress the evidence obtained during the search of Defendant's apartment. Defendant's convictions for possession of an imitation controlled substance and possession of drug paraphernalia are therefore affirmed.

¶ 19 WE CONCUR: RUSSELL W. BENCH, Presiding Judge, and JUDITH M. BILLINGS, Judge.